Hillsborough,
No. 5660.

EVERETT NATIONAL BANK

*v.*

ALBERT DESCHUITENEER.

Argued October 3, 1967.
Decided July 17, 1968.

*Broderick, Craig, Bourque & Costakis ( Elmer T. Bourque* orally ), for the plaintiff.

*Emile R. Bussiere* ( by brief and orally ), for the defendant.

PER CURIAM. The question in this case is whether *s.* 9-307 (2) of the Uniform Commercial Code ( RSA 382-A:9-307 (2)) is limited in its application to transactions between a consumer seller and a consumer buyer. Except for a dictum in one case ( *National Shawmut Bank* v. *Vera*, 223 N. E. 2d 515 ) there is no specific case in point, although several commentators familiar with the Uniform Commercial Code have discussed the problem.

In pertinent part *s.* 9-307(2) reads as follows: " In the case of consumer goods . . . a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes . . . unless prior to the purchase the secured party has filed a financing statement covering such goods. " *S.* 9-109 (1) defines consumer goods as those that " . . . are used or bought for use primarily for personal, family or household purposes. " Goods are " inventory " when held by a person who holds them for sale or lease. *S.* 9-109 (4).

The bank contends that consumer goods as defined in *s.* 9-109 (1) and as used in *s.* 9-307 (2) means that the goods are consumer goods in the hands of the seller. In other words, the bank contends that *s.* 9-307 (2) applies only in the case where one consumer, who has used or bought for use goods primarily for personal, family or household purposes, sells those goods to another consumer, who buys them for his personal, family or household purposes. Defendant contends that a buyer from an original source is entitled to the same protection as a buyer from a consumer. In other words, the defendant contends that *s.* 9-307 (2) applies regardless of whether the consumer buyer is obtaining the goods from a dealer or another consumer.

The facts are briefly summarized. In November 1965 one Russo purchased an automobile from Circle Pontiac, Inc., located in Revere, Massachusetts. Russo executed a conditional sales contract which was immediately assigned to the Everett National Bank, plaintiff in this action. Payments required under the conditional sales contract were never made by Russo and investigation disclosed that the credit references which he had given were substantially fictitious and the bank was unable to locate Russo. In December 1965 defendant purchased in Bedford, New Hampshire the automobile from one Saia, who represented himself as an agent of Prudential Motors located in Boston, Massachusetts. Payment was made by check payable to the order of Prudential Motors. It was agreed that the defendant had no notice of the existence of a conditional sales contract and that he purchased for family use. There is no indication in the agreed statement of facts as to how the automobile got from Russo to Saia.

The Everett National Bank filed financing statements on March 1, 1966 with the Secretary of State in Concord, New Hampshire and with the city clerk of Manchester, New Hampshire, but the conditional sales contract was never recorded in Massachusetts. The bank brought this action to replevy the automobile. The Court ( *Grimes,* J. ) entered a verdict for the defendant in the amount of $3,300 with interest from date of the seizure, and plaintiff's exceptions to the findings, rulings and verdict and to the denial of its motion to set aside its verdict were reserved and transferred.

As pointed out in paragraphs 1 and 2 in the comments to *s.* 9-109: " The classification [of goods] is important in many situations: it is relevant, for example, in determining the rights of persons who buy from a debtor goods subject to a security interest ( section 9-307 ) . . . . The classes of goods are mutually exclusive; the same property cannot at the same time and as to the same person be both equipment and inventory, for example . . . goods can fall into different classes at different times; a radio is inventory in the hands of a dealer and consumer goods in the hands of a householder. " As the use of the goods changes the category in which the goods fall may also change. 1 Gilmore, Security Interests In Personal Property *s.* 12.3 ( 1965 ). " It will be observed that the definition of ' consumer goods ' used in Art. 9 does not depend upon physical characteristics of the goods. The pivotal language in the definition is ' used or bought for use. ' Thus, it is the function which the goods are performing or are being purchased to perform which is crucial. " Strasheim, Art. 9 Of The Uniform Commercial Code As It Relates to Secured Transactions In Which The Collateral Is Consumer Goods Or Equipment, 43 Neb. L. Rev. 826, 828 ( 1964 ).

Commentators familiar with the Uniform Commercial Code have discussed *s.* 9-307 ( 2 ): " A purchase money security interest in consumer goods which is perfected but unfiled is subject to being defeated by a good faith consumer-buyer of the goods from a consumer-seller. " Vernon, Priorities, the Uniform Commercial Code, and Consumer Financing, 4 B. C. Ind. & Comm. L. Rev. 531 ( 1962 ). That *s.* 9-307 ( 2 ) has its limitations is apparent from the following quotation: " The purchase-money security interest in consumer goods, perfected without filing, does have its limitations. While good against creditors, subsequent encumbrancers and in bankruptcy, it will fail if the consumer purchaser sells the goods to a subsequent good-faith consumer purchaser. In other words, the automatic perfection only goes so far. If the secured party wants the greater perfection against subsequent purchasers, he must go to the greater trouble of filing. Whether the secured party wishes to do this is, of course, a practical decision based on the value of the collateral to him, his estimation of the likelihood of its sale at second hand to another consumer, the general creditworthiness of the original debtor and, perhaps

most important, the dollar amount of credit extended." Kripke & Felsenfeld, Secured Transactions: A Practical Approach to Article 9 of the Uniform Commercial Code 168, 175 (1959). Of course the secured party has an option to protect his interest even against the consumer buyer by filing under *s.* 9-307(2). *National Shawmut Bank* v. *Jones,* 108 N. H. 386, 388. "A consumer buyer from a consumer debtor who buys the collateral without knowledge of the security interest for value and for his own personal, family or household purposes . . . will prevail over the secured party. The secured party who wants legal protection against claims of those purchases may obtain it by filing." Davenport and Henson, Secured Transactions ii 73 (1966).

Section 9-307(2) protects the buyer of consumer goods from another consumer for his own personal use without knowledge of a perfected security interest and such buyer takes the goods free of the security interest unless the secured party has previously filed under *s.* 9-307(2). Coogan, Article 9 of the Uniform Commercial Code: Priorities Among Secured Creditors and The "Floating Lien" 72 Harv. L. Rev. 838, 848 (1959). Substantially similar views are held by other commentators. 2 Gilmore, Security Interests In Personal Property *s.* 26.12 *p.* 716 (1965); 1 Coogan, Hogan & Vagts, Secured Transactions Under UCC *s.* 7.02 [4]; 2 Hawkland, A Transactional Guide To The Uniform Commercial Code 780 (1964). See also the dictum in *National Shawmut Bank* v. *Vera,* 223 N. E. 2d 515, 518: "We assume that *s.* 9-307(2) protects one who innocently buys, for his own personal purposes, consumer goods directly from a dishonest consumer-purchaser, even if those goods are subject to a perfected security interest." See Stickells and Everberg, Manual of Uniform Commercial Code *s.* 9.114 *pp.* 94-95 (1968 supp).

The agreed statement of facts states that the defendant purchased the automobile from Saia "who represented himself as an agent of Prudential Motors." The defendant in his brief states that "he did not intend in the stipulation of facts to give the impression that the defendant in fact purchased the car from any existing dealer" for while he "may have thought he was purchasing a car from a dealer" the facts were otherwise.

The trial concentrated on the use to which the defendant was putting the goods rather than on the use to which the seller

Saia was putting the goods. According to the interpretation of *s.* 9-307(2) supported by the authorities, the goods must be consumer goods in the hands of both buyer and seller in order to fall under *s.* 9-307(2). There is no evidence in the agreed statement of facts to support the conclusion that the automobile was consumer goods in the hands of Saia, nor is there any evidence that Saia was not a dealer's agent, from which it could be inferred that Saia was a consumer. Saia's identity as a dealer's agent or as a consumer was not considered to be important at the time of the trial, therefore this case must be remanded for a proper determination of Saia's identity and a classification of the automobile either as inventory or consumer goods in the hands of Saia.

Plaintiff took exception to the Court's ruling that it had the burden of proving title in the action of replevin. The exception is overruled. *Taylor* v. *True,* 27 N. H. 220; *Moore* v. *Stevens,* 42 N. H. 404; *National Shawmut Bank* v. *Cutter,* 105 N. H. 206, 208. The Trial Court correctly applied the law as to the burden of proof of title which *s.* 9-307(2) in no way changes. Title is an issue to be decided separately from the issue of security interest preferences. See *s.* 9-202.

*Remanded.*

GRIMES, J., did not sit.