108 N.J. Super. 586 (1970)
262 A.2d 33
REDA M. MUIR AND FORD MOTOR CREDIT CORPORATION, A DELAWARE CORPORATION, PLAINTIFFS,
v.
JEFFERSON CREDIT CORPORATION, A NEW YORK CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 21, 1970.
*587 Mr. William T. Sutphin, appeared for plaintiffs (Messrs. Stryker, Tams & Dill, attorneys).
Mr. Milton Kramer appeared for defendant (Messrs. Kramer & Kramer, attorneys).
HANDLER, J.S.C.
The action herein is for the wrongful conversion of an automobile. It is before the court on cross-motions for summary judgment confined to the issue of liability.
The essential facts are not in dispute. On April 30, 1965 West Side Auto Sales, a used car dealer in New York, sold to one Jessie Cordova a 1963 Oldsmobile which was in turn assigned under a security agreement to defendant Jefferson Credit Corporation (hereinafter Jefferson), a finance company doing business in New York. Cordova, being a New Jersey resident, made application to the New Jersey Division of Motor Vehicles for the certificate of ownership. On May *588 28, 1965 the Division issued Cordova the original certificate of ownership indicating that the motor vehicle was subject to a lien in favor of Jefferson.
Cordova paid Jefferson the first seven monthly installments under the security agreement. He failed to pay the installment due in December 1965. Long prior to this default, and without the knowledge of Jefferson, Cordova forged a satisfaction of Jefferson's lien on the original certificate of ownership by affixing thereto a stamp "Paid," "Jefferson Credit Corp." with an illegible signature. On the strength of this forged satisfaction, Cordova obtained a loan from the Jersey Loan Company using the car as collateral. A new certificate of ownership dated July 9, 1965 was issued to Cordova subject to a security interest in favor of the Jersey Loan Company. Thereafter, Cordova in a trade-in transaction sold the vehicle to Key Ford, Inc., an automobile dealer. As part of this transaction the lien in favor of Jersey Loan Company was satisfied and the certificate of ownership was marked "Paid" on September 17, 1965. On September 23, 1965 there was an assignment in favor of Key Ford, Inc. and a new certificate of ownership was issued by the Division of Motor Vehicles in the name of Key Ford, Inc. on that date. On December 18, 1965 Key Ford, Inc. sold the automobile to plaintiff Reda M. Muir. The sale was financed by the Ford Motor Credit Corporation (hereinafter Ford), a plaintiff herein. On December 23, 1965 a new certificate of ownership was issued showing Muir to be the owner subject to the security interest of Ford.
As a result of independent investigations made after Cordova defaulted in December, Jefferson found that plaintiff Muir had possession of the automobile. During the night of February 8, 1966 defendant's agents seized the automobile without Muir's or Ford's knowledge and thereafter sold it to a New York dealer.
Plaintiffs contend generally that Jefferson's seizure of the car was inconsistent with their respective ownership rights *589 and security interest in the car and constituted a tortious conversion. Firstly, it is advanced that apart from the question of who has a superior right to the automobile, defendant's seizure and disposal of the automobile did not comply with the procedures called for under New Jersey law. Secondly, it is asserted that the ownership rights and security interest of the respective plaintiffs are superior to defendant's security interest. Lastly, plaintiffs contend that defendant is estopped from asserting a superior right in the automobile because its conduct made it possible for Cordova to commit the fraud.
The last two issues will be approached first. The perfection of a security interest in an automobile is governed by Title 39 of the New Jersey Revised Statutes. In re Ferro Contracting Co., 380 F.2d 116 (3 Cir.1967), cert. den. Barbato v. Livingston Nat. Bank, 389 U.S. 974, 88 S.Ct. 475, 19 L. Ed 2d 466 (1967). This result is dictated directly by the terms of the Uniform Commercial Code, viz:
The filing provisions of this Chapter do not apply to a security interest in property subject to a statute * * * of this state * * * which requires indication on a certificate of title of such security interests in such property. [N.J.S.A. 12A:9-302(3)]
Further:
A security interest in property covered by a statute described in subsection (3) can be perfected only * * * by indication of the security interest on a certificate of title or a duplicate thereof by a public official. [N.J.S.A. 12A:9-302 (4); emphasis added]
The requirements for perfection of a security interest in an automobile sold in New Jersey are spelled out in N.J.S.A. 39:10-11(J):
The notation of the name and business or residence address of a secured party or his assignee * * * on the certificate of ownership, as provided in sections 39:10-8 and 39:10-9 of this Title [sections dealing with new and used cars respectively], and the presentation to the director in accordance with section 39:10-11 of this Title, of *590 the * * * certificate of ownership so noted, and the compliance with the requirements of subsections C and D of section 39:10-11 of this Title, shall be in lieu of all filing requirements imposed by chapter 9 of Title 12A of the New Jersey Statutes and shall constitute the perfection of a security interest in the motor vehicle * * *.
Under this statute and in the context of this litigation, perfection consists of (1) the notation of the secured party on the certificate of ownership in accordance with N.J.S.A. 39:10-9; and (2) the presentation to the director of the certificate so noted "in accordance with section 39:10-11."
N.J.S.A. 39:10-9 requires that if a security interest is taken by a person who "gives value to enable the purchaser to acquire rights in the motor vehicle," his name and address "shall be noted on the certificate of ownership." There is no question that the certificate of ownership was duly noted with the name and address of Jefferson as the secured party under N.J.S.A. 39:10-9.
The certificate, so noted, was also presented to the Director of the Motor Vehicle Division. Some question may exist, however, as to whether the presentation by Cordova, the purchaser, and the delivery of the original certificate to him instead of Jefferson, the secured party, was at variance with the "presentation" requirements of N.J.S.A. 39:10-11. This statutory section provides that in case of an absolute sale, that is, one "not subject to a security interest," it is the purchaser who shall "submit to the director evidence of the purchase" and the certificate of ownership shall be "issued by the director and delivered to the buyer." N.J.S.A. 39:10-11(A). But in the case of a sale which is "subject to a security interest," it provides only that the encumbered certificate of ownership "shall be delivered to the holder of the encumbrance or secured party." N.J.S.A. 39:10-11(B). There is no explicit requirement that the "presentation" or evidence of encumbrance be submitted by the secured party.
It may be that the failure of a secured party to present evidence of the encumbrance and to obtain delivery of the original certificate detracts from the enforceability of its *591 security interest against certain classes of persons. (See discussion concerning estoppel, infra). But it would not appear that this failure, per se, would result in an unperfected interest where evidence of the lien of the secured party has been duly presented to the Director, recorded and filed by the Director, and a new certificate issued by the Director with the lien noted thereon. This conclusion is reinforced by the Uniform Commercial Code which provides that a security interest in property such as an automobile "can be perfected only * * * by indication of the security interest on a certificate of title * * * by a public official." N.J.S.A. 12A:9-302(4).
Aside from the initial position of Jefferson as the holder of a perfected interest, plaintiffs sharply dispute Jefferson's continued status in this capacity. They assert that when they acquired their respective interests in the automobile, the official record of the title indicated that there was no outstanding security interest; they were entitled to rely upon such record, and under Title 39 their title based on this is paramount to any other liens or interests in the vehicle. Jefferson argues, contrariwise, that its security interest was perfected and that under Title 39 and the Uniform Commercial Code its security interest did not become unperfected notwithstanding the subsequent issuance of a "clear" certificate of ownership to other parties by the Division of Motor Vehicles.
Title 39, as already noted, determines exclusively the mechanics for the perfection of a security interest in an automobile. N.J.S.A. 39:10-11(J). It further provides:
* * * the rights and remedies of the debtors and the secured parties in respect to such security interest shall, except as otherwise expressly provided in this chapter, be subject to and governed by chapter 9 of Title 12A of the New Jersey Statutes. Id.
The Motor Vehicle Act does not expressly provide for a determination of rights as between the holder of a perfected security interest who has not authorized a satisfaction of his *592 lien on the original certificate of ownership, and a subsequent purchaser and lien holder for value who have acquired and perfected their respective interests without knowledge of the prior lien. In the absence of such express provision, recourse must be to the Uniform Commercial Code.
The Uniform Commercial Code generally contemplates the continuous perfection of a security interest where there has been no intermediate or intervening period when it was unperfected. Cf. N.J.S.A. 12A:9-303. The perfection of a security interest in collateral is not discontinued or interrupted by a sale, exchange or other disposition by the debtor, if unauthorized by the creditor, viz:
Except where this Chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, * * *. [N.J.S.A. 12A:9-306 (2)].
It is not disputed that Cordova's subsequent forged satisfaction of Jefferson's lien on the original certificate of ownership, the encumbrancing of the vehicle with Jersey Loan Company and the sale to Key Ford Inc., were without the authority of Jefferson. These acts on the part of Cordova therefore did not serve to discontinue or unperfect Jefferson's security interest under the Code.
The Code does extend to certain persons rights superior to those of a party whose prior security interest has a perfected status. It provides:
(1) A buyer in ordinary course of business (subsection (9) of 12A:1-201) * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
(2) In the case of consumer goods * * * a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes * * * unless prior to the purchase the secured party has filed a financing statement covering such goods. [N.J.S.A. 12A:9-307].
*593 Section 9-307 (1) is for the exclusive protection of those who buy from merchants in the ordinary course of business and out of inventory. Nevertheless, 9-307 (1) limits its protection of such buyers against only a security interest which was "created by [the buyer's] seller." The sale to Muir was from Key Ford, not from Jefferson. Muir, although a buyer in the ordinary course, is not protected by section 9-307 (1) since the security interest of Jefferson was one created by a party other than her own immediate seller. Cf. National Shawmut Bank v. Jones, 108 N.H. 386, 236 A.2d 484 (Sup. Ct. 1967).
With respect to subsection 2 of 9-307, this has been construed as embracing transactions between consumers. The curtailment of 9-307 (2) to the consumer-from-consumer transaction may be discerned after close scrutiny of the language. As was stated in New England Merch. Nat. Bank v. Auto Own. Fin. Co., 245 N.E.2d 437 (Mass. Sup. Jud. Ct. 1969):
Careful reading of the entire subsection leads to the conclusion that the opening phrase, `In the case of consumer goods,' must require that the seller as well as the buyer be a consumer. If the buyer alone has to be a consumer, the opening phrase would be surplusage because of the subsequent provision that the buyer purchase `for his own personal, family or household purposes,' which is nothing more than a repetition of the definition of consumer goods in § 9-109 (1).
We hold that under § 9-307 (2) both the buyer and seller must be consumers. [at 438; See also Everett Nat'l Bank v. Deschuiteneer, 109 N.H. 112, 244 A.2d 196 (1968).]
In sum, neither the Motor Vehicle Act nor the Uniform Commercial Code dislodges or subordinates the prior perfected security interest of Jefferson vis-a-vis plaintiffs' subsequent interests.
Plaintiffs argue that Jefferson should be estopped from asserting its prior interest in the automobile because its course of action made possible the occurrence of the loss. Such an argument is not based on any specific statutory provision but instead proceeds from general common law and equitable *594 principles. The Uniform Commercial Code explictly provides in N.J.S.A. 12A:1-103 that previously recognized principles of law and equity should supplement the statute in those areas where the Code is silent.
Plaintiffs' position is based on the ancient equitable maxim that "where one of two innocent persons must suffer by the wrongdoing of a third, he who arms the wrongdoer with the power to commit the wrong must suffer its effects." Cf. Arsen v. Director, Div. of Motor Vehicles, 61 N.J. Super. 131, 136 (Law Div. 1960). Plaintiffs cite three recent cases from other jurisdictions in support of the contention that the secured party ought not to prevail over a bona fide purchaser or lien holder of an automobile when the secured party permitted the vehicle to come into the possession of a person with apparent authority to sell it free and clear of any security interest: Commercial Credit Corp. v. Associates Discount Corp., 246 Ark. 118, 436 S.W.2d 809 (Sup. Ct. 1969); Franklin Investment Co., v. Homburg, 252 A.2d 95 (D.C. Ct. App. April 3, 1969), (not yet officially reported); Medico Leasing Co. v. Smith, 457 P.2d 548 (Okl. Sup. Ct. 1969). These cases, however, all involve factual situations in which the secured party placed the automobile in the possession of a dealer who might reasonably be expected to sell to the general public. This is distinguishable from the present situation wherein the automobile was disposed of by a consumer (Cordova) not in the business of selling automobiles. Examination of the reasoning behind the cited cases reveals that Franklin Investment, was based on a construction of the "buyer in ordinary course" provision of the Uniform Commercial Code, N.J.S.A. 12A:9-307 (1). The other two cases rested primarily on the "entrusting of goods to a merchant" provision of the Code, N.J.S.A. 12A:2-403, similarly inapplicable.
Jefferson refers to an Indiana case, Central Finance Co. of Peru v. Garber, 121 Ind. App. 27, 97 N.E.2d 503 (App. Ct. 1951). In that case an automobile dealer gave the certificate of title, with the finance company's lien noted thereon, to the *595 conditional sale purchaser of an automobile. Before presenting the title papers to the Bureau of Motor Vehicles for transfer, the notation of the security interest was erased from the document. The purchaser was then able to pass off the automobile to an innocent party who had no knowledge of the lien and relied on the certificate of title showing no encumbrance. The Indiana court held that the secured party was not estopped from asserting its lien since it had complied with all the applicable statutory requirements. The court emphasized that Indiana law required only that the lien be inscribed upon the certificate of title but made no further requirement that the secured party retain possession of the certificate. Since the secured party had done everything it was required to do by statute and could not be expected to anticipate that his debtor would commit a forgery, the court declined to find an act or omission on which to posit an estoppel.
In General Motors Acceptance Corp. v. Hill, 95 Ariz. 347, 390 P.2d 843, 844 (1964), the Arizona Supreme Court applied Pennsylvania law which provided that the certificate be delivered to the secured party and "be retained by such person until the entire amount of such lien or encumbrance is fully paid by the owner of said motor vehicle * * *." The secured party gave the certificate of ownership to the purchaser, thereby enabling him to forge a satisfaction of the lien, obtain a new unencumbered certificate of title and then sell the automobile to an unsuspecting third party. The court held that the secured party was estopped from claiming any interest in an automobile as a result of its relinquishing possession of the certificate to a purchaser contrary to the statutory admonition. In characterizing the conduct of the secured party the court stated, "By releasing the certificate of title to [the debtor], appellant clothed him with sufficient indicia of ownership to permit the subsequent fraud." 390 P.2d, at 845.
The New Jersey Motor Vehicle Act is closely analogous to that of Pennsylvania as quoted in the Hill case. N.J.S.A. *596 39:10-11, subd. B states in mandatory language that in the case of a sale subject to a lien, the certificate of ownership so noted shall be delivered to the holder of the encumbrance and a copy to the purchaser. N.J.S.A. 39:10-10 further provides in the case of a conditional sale contract that where the lien has been paid "the seller or secured party shall deliver to the buyer the certificate of ownership thereto, executed as provided in this chapter, with proper evidence of satisfaction of the contract or termination of the security interest." These provisions are similar to that of the Pennsylvania statute which provided that the certificate be retained by the secured party until payment of the amount of the lien. It does no injustice to common sense or the statutory language to conclude that since the New Jersey law provides for the certificate of ownership to be delivered to the secured party at the time of the sale and relinquished by it to the buyer at the time the full purchase price for the automobile is paid, the intention of the statutory scheme is that during the interim period, while the lien is still unsatisfied, the certificate of ownership should be retained by the secured party.
Jefferson vigorously denies that it is responsible for Cordova's obtaining possession of the original certificate of ownership. According to defendant, an error was committed by the New Jersey Division of Motor Vehicles when it delivered the certificate to the debtor rather than to the secured party.
Assuming arguendo that the Division of Motor Vehicles improperly gave the certificate to Cordova, it is apparent that Jefferson as the secured party did not act reasonably to protect its security interest. The sale of the car from West Side Auto Sales, Inc. to Cordova, financed by Jefferson, took place on April 30, 1965. No explanation was offered by Jefferson as to why, as the secured party, it did not make the application directly for the original certificate of ownership rather than permit the purchaser Cordova, a stranger, to make the application and obtain the original certificate. Moreover, *597 according to its affidavit, Jefferson was almost immediately aware that it had not come into possession of the certificate. Yet Jefferson's efforts to obtain the certificate were informal and sporadic. It took no definitive action to recover the automobile until Cordova defaulted in its payments in December 1965, long after the fraud had been committed. No attempt was made by Jefferson until that time to recover the car or to have a duplicate certificate of title issued pursuant to N.J.S.A. 39:10-12, or to have the Motor Vehicle Director recover the original certificate on proper application. Cf. N.J.S.A. 39:10-16 and 22.
What was said by the court in National City Bank of New York v. Del Sordo, 16 N.J. 530, 543 (1954), in a somewhat variant context, is apposite here: "* * * [A] lender who loans money upon the security of a motor vehicle without demanding and obtaining the certificate of ownership therefor is careless with his own right and funds."
In conclusion, Jefferson was under a duty to act reasonably to protect its security interest in the automobile; this included a duty to have made the initial application to obtain the original certificate and to take steps available to it to secure its possession. The failure to discharge this duty created a risk that the original certificate in the hands of a purchaser might be fraudulently negotiated and that innocent third persons might rely thereon to their detriment. In this case such reliance did occur on the part of plaintiffs, who suffered as a result thereof. They are therefore entitled to claim the benefit of an estoppel against defendant.
In view of the foregoing, the remaining issues need not be addressed. In accordance with this opinion, summary judgment in favor of plaintiffs and against defendant on the issue of liability will be granted.