In the Matter of **MANUFACTURERS CREDIT CORPORATION, a New Jersey corporation, et al., Debtors.**

Appeal of **PEOPLES TRUST OF NEW JERSEY (formerly known as Peoples Trust Company of Bergen County) a trade creditor.**

**No. 18252.**

United States Court of Appeals, Third Circuit.

Argued Sept. 25, 1970.

Decided April 12, 1971.

1314

Judge Freedman participated in the hearing and consideration of the appeal but died before decision.

Arthur L. Abrams, Newark, N. J., Winne & Banta, Hackensack, N. J., for Creditor, Peoples Trust of N. J. (formerly known as Peoples Trust Co. of Bergen County), appellant; (Joseph A. Rizzi, Hackensack, N. J., on the brief).

Michael R. Griffinger, Crummy, Gibbons & O'Neill, Newark, N. J., for appellee.

Before KALODNER, FREEDMAN * and ADAMS, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

Where a bank has financed the purchase of 20 motor buses in New Jersey and perfected a security interest in them by proper filing with the New Jersey Director of Motor Vehicles ("Director"), was it required, under New Jersey law, to make a further filing with the Director of a subsequent *non-purchase* money loan on the same buses in order to perfect a security interest in them as to the second loan?

The question was answered in the affirmative by the Referee in Bankruptcy in the instant proceedings for reorganization under Chapter X of the Bankruptcy Act. The District Court, on review, agreed. This appeal followed.

The relevant undisputed facts may be summarized as follows:

On April 13, 1965, the Washington Corporation ("Washington"),[1] one of the 26 related companies involved in the instant reorganization proceedings, bought 20 buses from the General Motors Corporation. The transaction was financed by a $778,000 purchase money loan from the appellant Peoples Trust Company of New Jersey ("Peoples").[2] Washington gave Peoples a Secured Installment Note dated April 13, 1965 for $778,000 which provided for a 5% interest rate and the payment of eighty-four consecutive monthly installments of $9,-261.90, beginning on May 13, 1965. Washington also gave Peoples an Inventory Loan and Security Agreement dated April 13, 1965 which listed the 20 buses by serial numbers as security for the loan.

On receiving the above stated instruments, Peoples filed with the Director the manufacturer's (General Motors Corporation) Statements of Origin of the 20 buses and an application for issuance of Certificate of Ownership for each of them, in compliance with New Jersey's Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:10–8. Certificates of title dated April 13, 1965, were then issued by the Director to Peoples for each of the 20 buses. These Certificates noted existence of a lien in favor of Peoples.

Washington also executed a Financing Statement on April 13, 1965 in which the 20 buses were listed by their serial numbers. The Financing Statement was filed with the Secretary of State of New Jersey on April 14, 1965.

On October 4, 1966, Peoples made a second loan of $375,000 to Washington. The latter then gave Peoples a Note, dated October 4, 1966 in the amount of $375,000, bearing interest at 6% and payable monthly for a period of 25 months. Washington, the same day, also gave Peoples a Security Agreement which listed as collateral for the $375,-000 loan the 20 buses covered by the April 13, 1965 Inventory Loan and Security Agreement, and 20 other buses previously financed by Peoples in 1963.[3]

---

* Judge Freedman participated in the hearing and consideration of this appeal but died before decision.

1. Washington was engaged in the business of owning and leasing buses to operating bus lines.

2. Peoples was then known as Peoples Trust Company of Bergen County, N. J.

3. On March 12, 1963, Washington bought 20 buses. The transaction was financed by a $682,297 purchase money loan from Peoples. Washington then gave Peoples a Note and Security Agreement as to this loan. On March 14, 1963 Peoples filed with the Director the Certificates of Ownership of the 20 buses along with a filing with respect to each on a form prescribed by the Director. The latter then issued new Certificates of Ownership which listed Peoples as a holder of a security agreement or lien. Concurrently, Peoples as secured party, and Washington, as debtor, executed a single Financing Statement which was filed with the Secretary of State of New Jersey.

The 1963 loan has been paid in full and Peoples has stamped as "Paid" the Certificates of Ownership relating to the 1963 buses and delivered them to Washington.

Concurrently with the execution and delivery of the Note and Security Agreement on October 4, 1966, Peoples, as secured party, and Washington, as debtor, executed a single Financing Statement which Peoples filed with the Secretary of State of New Jersey on October 7, 1966. This Financing Statement listed the 40 buses previously mentioned, as security for the $375,000 loan.

Peoples did *not* file a Financing Statement, nor any other paper, with the Director in connection with the October 4, 1966 loan.

The Referee in Bankruptcy ruled that by reason of Peoples' failure to file a Financing Statement with the Director with respect to its October 4, 1966 loan, it had not perfected a security interest as to it in any of Washington's buses. In doing so, he held that under the Uniform Commercial Code, as enacted by New Jersey, its filing provisions as to the security interest "do not apply to a security interest in property subject to a statute," N.J.S.A. 12A:9-302(3), and that under subsection (4) of that statute a security interest in property covered by a statute "can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official." The cited section, the Referee held, requires a lien on a motor vehicle to be recorded with the Director under the provisions of N. J.S.A. 39:10-11, and Peoples' failure to comply with that requirement in connection with the $375,000 October 4, 1966 loan rendered unsecured the loan's unpaid balance of $225,000.

The Referee further held that Washington and Peoples had not by their April 13, 1965 Inventory and Loan Agreement provided for additional future loans to Washington, and that the Agreement, which was filed with the Director, served to perfect a lien only with respect to the $778,000 loan then made, and did not operate to create a lien with respect to the $375,000 October 4, 1966 loan.

In consonance with his stated holdings, the Referee entered an Order on March 5, 1969 which adjudicated null and void as to the Receiver and/or Trustee, Peoples' claimed lien against any of Washington's buses by reason of the October 4, 1966 loan. The Referee, moreover, pointed out in his Order that the validity of Peoples' claimed lien against the 20 buses involved in the April 13, 1965 loan of $778,000 (then reduced to $509,404.90) was not contested by the Receiver and Trustee.

The District Court, in its Opinion affirming the Referee's Order, held that the failure to file a Financing Statement with the Director with respect to the second loan of $375,000, "or any papers with the Motor Vehicle Division with respect to the said second loan," resulted only in an "unperfected security interest." Such interest, it held, "becomes subordinate to the rights of a person who becomes a lien creditor without knowledge of the security interest and before it is perfected."

Peoples, on this appeal, contends that "the filings made on April 13, 1965 perfected not only the security interest which attached on April 13, 1965 but also the security interest which attached on October 4, 1966," because "the purpose and effect of a filed financing statement or any prescribed filing in lieu thereof is only to give notice to third parties of a possible security interest and to establish priority of security interests," and that "a filed financing statement or any prescribed filing in lieu thereof can apply to a security interest whether existing at the time of filing or not created until later. * * *" Peoples make the further contention that "the April 13, 1965 Security Agreement is a revolving credit agreement which provides for future advances" and thus "the security interests which secured the October 4, 1966 ad-

---

In light of the foregoing, Peoples makes no claim to a security interest in these 1963 buses and they are literally out of this case.

vance were perfected by the April 13, 1965 Agreement and Filings."

Coming now to the disposition of these contentions:

First and foremost, we must point out that we are here concerned solely with the impact of the provisions of the New Jersey Motor Vehicle Certificate of Ownership Law, as amended. N.J.S.A. 39:10–8; 10–11. That is so, since New Jersey's Uniform Commercial Code, at N.J.S.A. 12A:9–302, specifically provides that the Code's filing provisions as to a security interest *do not apply to a security interest in property subject to a statute,*" and that "a security interest in property covered by a statute * * * can be perfected *only* by registration or filing under that statute or by indication of the security interest on a certificate of title * * *." (emphasis supplied)

■ New Jersey's "Motor Vehicle Certificate of Ownership Law" specifically prescribes requirements, later detailed, for the perfection of a security interest in a motor vehicle, and these requirements prevail with · respect to perfection of a security interest in a motor vehicle, under the exclusionary clause of the Code, earlier stated.

Moreover, the Motor Vehicle Certificate of Ownership Law, at N.J.S.A. 39:10–11, subd. J provides that its filing requirements "shall be in lieu of all filing requirements imposed by chapter 9 of Title 12A of the New Jersey Statutes [Uniform Commercial Code] * * *."

■ We have held that where the Certificate of Ownership Law of New Jersey is applicable to the filing of a security interest in a motor vehicle, its provisions, and not those of the New Jersey Uniform Commercial Code, govern the proper method of filing. In re Ferro Contracting Co., 380 F.2d 116, 118, n. 1 (3 Cir. 1967), cert. den. sub nom. Barbato v. Livingston National Bank, 389 U.S. 974, 88 S.Ct. 475, 19 L.Ed.2d 466 (1967). The Superior Court of New Jersey has explicitly ruled to the same effect. Muir v. Jefferson Credit Corp., 108 N.J.Super. 586, 589, 591, 262 A.2d 33, 34, 35 (1970).

In *Muir,* the Court said at page 589, 262 A.2d at page 34:

"The perfection of a security interest in an automobile is governed by Title 39 of the New Jersey Revised Statutes.";

and, at page 591, 262 A.2d at page 35:

"Title 39, as already noted, determines *exclusively* the mechanics for the perfection of a security interest in an automobile." (emphasis supplied).

■■ In light of what has been said, we are required only to decide whether the requirements for the perfection of a security interest as specified in N.J.S.A. 10–11 were met in connection with Peoples' $375,000 October 4, 1966 loan to Washington.

It is undisputed that this loan was not a purchase money loan but simply a loan collateralized by buses already owned by Washington.

Subsections C and D of N.J.S.A. 39:10–11 prescribe in succinct terms the procedure necessary to perfect a security interest when such a loan is made.

Subsection C provides in relevant part:

" * * * there shall be filed with the director, *the certificate of ownership of the motor vehicle, together with a financing statement on a form prescribed by the director. The director shall make and file a record of the transaction and shall issue a certificate of ownership recording the name and address of the secured party or his assignee thereon, and shall deliver it to the secured party or his assignee.* * * *" (emphasis supplied).

and Subsection D provides in relevant part:

"*The financing statement required to be filed* pursuant to subsection C hereof shall be signed * * * and shall show, in addition to such matters as the director may require for the proper identification of the motor vehicle affected, *the date of the security*

*agreement, and the names and addresses of the parties thereto.* * * * " (emphasis supplied).

Peoples utterly failed to comply with the stated requirements of subsections C and D pursuant to its October 4, 1966 loan. It did not file with the Director a certificate of ownership of the buses pledged by Washington as collateral for that loan, nor did it file a Financing Statement with the Director with respect to that transaction. Indeed, it is undisputed that Peoples did not file with the Director *any* paper of any kind relating to the October 4, 1966 loan.

The only filing made by Peoples in connection with the October 4, 1966 transaction was the Financing Statement filed with the Secretary of State of New Jersey. That filing was an exercise in futility and a legal nullity insofar as satisfaction of the requirements of subsections C and D is concerned. There is no provision in any New Jersey law which even remotely suggests the requirement of filing of a Financing Statement with the Secretary of State of New Jersey in connection with a *non-purchase* money loan collateralized by a motor vehicle already owned by the one to whom the loan was made. The October 4, 1966 loan, as earlier stated, was such a loan.

Peoples' contention that the filings made with the Director, pursuant to the April 13, 1965 loan, perfected not only the security interest which then admittedly attached, but also perfected a security interest by reason of the October 4, 1966 loan transaction, requires no extended discussion.

That contention is premised on Peoples' view that once a security interest is perfected with respect to a motor vehicle that perfection "substantially" suffices to embrace any and all future loan transactions between the same parties on the identical collateral. The governing New Jersey statute gives no sanction to that contention.

■ Peoples further contends that the April 13, 1965 Security Agreement "is a revolving credit agreement which provides for future loans" and thus "the security interests which secured the October 4, 1966 advance were perfected by the April 13, 1965 Agreement and Filings."

In support of this contention, Peoples cites the following provision in the 1965 Security Agreement:

"Section 2.1. AMOUNT OF LOAN. The Bank, from time to time in its discretion, will lend the Borrower at Borrower's request, sums, *which in the aggregate at any time outstanding, shall not exceed $778,000.*" (emphasis supplied).

■ Assuming, arguendo, that this provision sets up a revolving credit providing for future advances not to exceed $778,000, it affords no nourishment to Peoples' contention that the perfection of the security interest with respect to the 1965 loan extended to and embraced the $375,000 loan of October 4, 1966. At the time the latter loan was made there was an unpaid balance of $620,547 on the $778,000 loan of April 4, 1965. Thus, by reason of the October 4, 1966 loan the indebtedness of Washington to Peoples was swelled to $995,547 which is $217,547 in excess of the $778,000 debt limitation specified by Section 2.1 of the 1965 Security Agreement. That being so, putting all other considerations aside, it cannot be said that the $375,000 loan of 1966 came under the umbrella of the security interest perfected with respect to the 1965 loan.

Peoples' contention that execution of the 1966 Agreement constituted a waiver of the $778,000 borrowing limitation of the 1965 Agreement falls short of being specious inasmuch as there was no reference at all in the 1966 Agreement to the 1965 Agreement or the latter's $778,000 borrowing limitation. Further, Section 9.4 of the 1965 Agreement specifically requires that all waivers of Peoples' rights under that Agreement must be in writing, signed by Peoples. No such waiver as to the $778,000 bor-

rowing limitation by Peoples was executed.

That Peoples treated the October 1966 loan and Agreement as a transaction, independent of the 1965 loan and Agreement, is demonstrated by the fact that it filed a Financing Statement with the Secretary of State of New Jersey as to the 1966 loan, albeit that filing was a futility, as earlier stated. Moreover, the separateness of the 1965 and 1966 transactions is evidenced by these factors: (1) the 1965 loan was collaterized by 20 buses and the 1966 loan was collaterized by the same 20 buses and 20 additional buses; (2) the interest rate on the 1965 loan was 5% while that on the 1966 loan was 6%; and (3) the schedules for repayments of the 1965 and 1966 loans were different—84 months for the 1965 loan and 25 months for the 1966 loan.

In conclusion, there remains this to be said:

New Jersey courts have consistently subscribed to the earlier cited holding in *Muir* that Section 39 of the state's Motor Vehicle Certificate of Ownership Law "determines *exclusively* the mechanics for the perfection of a security interest in an automobile."

In the leading case of National City Bank of New York v. Del Sordo, 16 N.J. 530, 109 A.2d 631 (1954) where the constitutionality of 39:10-11 was unsuccessfully challenged, the Court held that the statute's provisions were "exclusive," and that they permit *"the recording and notation of multiple liens."* 16 N.J. 545, 109 A.2d 639. (emphasis supplied).

In Ferrante Equipment Company v. Foley Machinery Co., 49 N.J. 432, 231 A.2d 208 (1967), the Court said:

"Under N.J.S.A. 39:10-11 (B) and (C), whenever a security interest is created in a motor vehicle, it must be reported to the Division of Motor Vehicles so that both the owner of the vehicle and the secured party can have issued to them a certificate of title on which the security interest will be noted." 49 N.J. 438, 231 A.2d 211.

In perfecting its security interests with respect to its 1963 and 1965 loans to Washington, in compliance with the requirements of Section 39, Peoples manifested its awareness of the compelling specifications of that statute as to perfection of a security interest. Its inexplicable failure to comply with the provisions of the statute with respect to its 1966 loan was fatal to its claim of a security interest in Washington's buses by reason of that loan, as the District Court and Referee in Bankruptcy held.

Peoples' contention that there was "substantial compliance with the system of notice filing adopted by the New Jersey Legislature," with respect to its 1966 loan, by reason of the filings made with the Director pursuant to its 1965 loan, disregards the fact that subsections C and D of N.J.S.A. 39:10-11 require for the perfection of a security interest the filing with the Director of (1) a certificate of ownership of a motor vehicle; and (2) a financing statement stating "the *date* of the security agreement, and the names and addresses of the parties thereto." (emphasis supplied). Here, Peoples did not file with the Director, in connection with its 1966 loan, either a certificate of ownership or a financing statement stating the date of the 1966 security agreement and the names of the parties thereto, nor any paper of any kind whatsoever relating to the 1966 loan. Our subscription to the "substantial compliance" contention would in effect serve to strike subsections C and D of N.J.S.A. 39:10-11 and that, of course, would constitute prohibited judicial legislation.

For the reasons stated, the Order of the District Court adjudicating null and void as against the Receiver and/or Trustee, Peoples' claimed security interest by reason of its October 4, 1966 loan, will be affirmed.