Hillsborough
No. 6380

## JOHN BALON v. CADILLAC AUTOMOBILE COMPANY OF BOSTON

## CADILLAC AUTOMOBILE COMPANY OF BOSTON v. STANLEY GIBERT

March 29, 1973

*Emile R. Bussiere,* by brief and orally, for John Balon and Stanley Gibert..

*Burns, Bryant, Hinchey, Cox & Shea* and *John T. Barrett III* (*Mr. Robert P. Shea* orally) for Cadillac Automobile Company.

LAMPRON, J.  Appeals in two separate actions based on the same factual pattern. John Balon sued Cadillac Automobile in trover to recover damages for the conversion, on or about December 15, 1965, of a 1965 Cadillac car. Cadillac Automobile brought an action of replevin against Stanley Gibert to recover another 1965 Cadillac automobile. Trial before *Perkins, J.* who made certain findings and rulings and returned a verdict for plaintiff Balon in the amount of $4300 with interest; and a verdict for defendant Gibert in the same amount with interest. The exceptions of Cadillac Automobile to the denials of its motions for nonsuit, directed verdict, and to set aside the verdicts were reserved and transferred.

The issue to be decided is whether the trial court properly found and ruled that Balon and Gibert each had clear title to his automobile by virtue of section 9-307 of the Uniform Commercial Code. RSA 382-A:9-307.

On September 28, 1965, Charles Pernokas was a salesman for Cadillac Automobile in Boston, Massachusetts. He had previously worked for another employer as a car salesman with Russell Saia. On that day Saia came to Cadillac Automobile looking for a convertible for a customer. Pernokas showed him two cars and Saia said he would hear from him shortly. He telephoned soon thereafter saying that his customer, Peter J. Russell, would take one of the Cadillac convertibles and gave the required credit information and references. On the next day, Saia telephoned Pernokas again and told him another customer, Joseph P. DeLuca, would take the other convertible and gave credit information on him.

Pernokas testified that in each instance he delivered the car to Saia's place and that Saia and another person, supposedly Russell in one instance and DeLuca in the other, identified himself and signed the security agreements. The selling price, $5300 for each car, was paid by a $1000 cash down payment on each and the balance financed on a conditional sale agreement.

At about that time, an individual named Arthur Freije told Balon in Manchester that "somebody" had a "friend"

who could get a good deal on Cadillacs. "Somebody" was Fred Sarno who had accompanied Saia on his visit to the Cadillac garage after which the two cars in question were bought. The "friend" was Russell Saia. Balon passed the information along to his stepfather, Gibert, and eventually both Balon and Gibert purchased a Cadillac convertible through Freije for $4300 each.

The October and November payments on these Cadillacs were not made to Cadillac Automobile. As a result of these defaults, Simon, its credit manager, made an investigation and concluded that Peter J. Russell and Joseph P. DeLuca, the apparent purchasers, did not exist and decided that "both of these were two straw deals." There was evidence that payments on these cars were made at the garage in December by Russell Saia or with his knowledge. After the cars were repossessed from Balon and Gibert a meeting was arranged at the Cadillac garage to straighten out the matter. When they had waited there about two hours for someone to come, Simon made a telephone call and a man arrived who was overheard to say he was Peter Russell. In a later conversation with Balon and Gibert the man identified himself as Russell Peters. When asked for credentials by Simon, this same person showed him a license made out to Russell Saia and said that Peter Russell was an alias he used. There was evidence that the address given as that of Peter Russell on the credit statement and security agreement in conjunction with the car purchased in his name was listed in the city directory as the residence of "Mrs. Jean Saia". The trial court properly found on the evidence that the two Cadillac automobiles in question were purchased by Russell Saia and that he was the principal in their sale to Balon and Gibert.

RSA 382-A:9-307, insofar as material here, reads as follows: (1) "A buyer in the ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. (2) In the case of consumer goods . . . a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes . . . unless prior to the purchase the secured party has

filed a financing statement covering such goods." Under Massachusetts law the secured interest of Cadillac Automobile was perfected when the agreement of the parties was executed. Mass. Gen. Laws Ann. 106:9-302. However the security agreements covering these two automobiles were never filed. RSA 382-A:9-403.

The buyer protected by § 9-307 (1) is one who purchases in the ordinary course of business from a person in the business of selling goods of the kind involved. § 1-201 (9). Hence § 9-307 (1) applies primarily to purchases from the inventory of a dealer in the type of goods sold. 4 Anderson, Uniform Commercial Code 323-24 (2d ed. 1971); *see National Shawmut Bank v. Jones,* 108 N.H. 386, 236 A.2d 484 (1967). The buyer protected under § 9-307 (2) is one who purchases goods for consumer use, that is, for personal, family or household purposes, from a consumer seller. In order to fall within the protection of this section the goods must be consumer goods in the hands of both the buyer and the seller. *Everett Nat'l Bank v. DeSchuiteneer,* 109 N.H. 112, 115, 244 A.2d 196, 198 (1968); *New England Merchants Nat'l Bank v. Auto Owners Fin. Co., Inc.,* 355 Mass. 487, 245 N.E.2d 437 (1969).

The categorization of these automobiles at the time of the execution of the security agreement with Cadillac Automobile is an important factor in determining whether they were inventory or consumer goods in the hands of Saia when he sold them. *Franklin Inv. Co. v. Homberg,* 252 A.2d 95, 97-98 (D.C. Ct. App. 1969). This classification of the goods remains unchanged in the controversy between Balon, Gibert, and Cadillac Automobile when it seeks to enforce its security agreement. *Id.* Simon, Cadillac's credit manager, testified that it is company policy to record security agreements except when the buyer is an individual consumer as determined by the contract. Their security agreement provides that if the car is purchased for business purposes the address of the buyer's place of business must appear as the address on the front of the contract. There was evidence that the address on the front of the Peter Russell contract was listed in the Boston directory as the residence of Mrs. Jean Saia. Simon also testified that as far as the seller was concerned these sales were made to two private consumers for their

personal, family and household use. Accordingly, following its policy with respect to consumer purchasers, the security agreements were not filed.

We hold that the trial court properly found and ruled that Russell Saia was a dishonest consumer purchaser of these automobiles. We further hold that these cars remained consumer goods in his hands at the time of the sales to Balon and Gibert who are protected by RSA 382-A:9-307 (2) if they were good faith consumer buyers for value without knowledge of Cadillac's security interest.

The company maintains, however, that the only conclusion which can be reached on the evidence is that Balon and Gibert "could not have conceivably held honest convictions that these transactions were legitimate." In support it cites § 1-201 (19) which provides: "'Good faith' means honesty in fact in the conduct or transaction concerned." By its terms this is a subjective standard of good faith, that is, whether the particular purchaser believed he was in good faith, not whether anyone else would have held the same belief. The test is what the particular person did or thought in the given situation and whether or not he was honest in what he did. Comment, *Good Faith Requirement For Buyer in Ordinary Course,* 14 B.C. Ind. & Com. L. Rev. 343, 348 (1972); *see Sherrock Bros. v. Commercial Credit Corp.,* 290 A.2d 648 (Del. 1972).

There was evidence that Gibert had known Freije, who made the approaches which culminated in these sales, in a social way for about fifteen years. His wife had known him all her life. Balon knew him also and had purchased a 1963 Cadillac from him without any untoward incidents. Balon and Gibert learned from inquiries made to dealers known to them that the asking price of $4300 was consistent with prices at which such cars could be bought. The explanation advanced that these convertibles sold in September, when the new models were due, could be found by them plausible reasons for the price quoted. Simon testified that when Balon and Gibert came to Boston after their cars were taken they seemed genuinely concerned and trying to figure out what happened. There was no evidence that they had actual knowledge of the status of the title to these cars. The fact that others might have acted differently, made more inquiries,

or been more suspicious does not require a conclusion that they lacked good faith when they purchased these cars. Comment, *Good Faith Requirement for Buyer in Ordinary Course,* 14 B.C. Ind. & Com. L. Rev. 343, 348 (1972). The evidence is clear that they paid value and bought for personal, family, or household purposes.

We hold that the trial court properly found and ruled that Balon and Gibert were good faith consumer buyers for value from a consumer seller without knowledge of Cadillac Automobile's security interest which had not been filed. RSA 382-A:9-402. Consequently they were entitled to the protection of RSA 382-A:9-307 (2). Egan, *Priorities Under Article 9 of the Uniform Commercial Code,* 38 Conn. B.J. 174, 177 (1964); *see National Shawmut Bank v. Jones,* 108 N.H. 386, 236 A.2d 484 (1967); *Everett Nat'l Bank v. DeSchuiteneer,* 109 N.H. 112, 244 A.2d 196 (1968).

*Judgment on the verdicts.*

All concurred.