New England Merchants National Bank of Boston
*vs.* Auto Owners Finance Company, Incorporated.

Suffolk. February 6, 1969. — March 11, 1969.

Present: Wilkins, C.J., Spalding, Whittemore, Kirk, &
Reardon, JJ.

*Security Interest.* *Uniform Commercial Code*, Security interest, Consumer goods.

The provision of G. L. c. 106, § 9–307 (2), giving an innocent buyer for value of "consumer goods" freedom from an unrecorded prior security interest therein applies only where both the buyer and the seller of the goods are consumers, so that such a buyer of an automobile for personal and family use from a dealer in new and used automobiles did not take the automobile free from an unrecorded security interest therein of a bank which had lent money to a previous owner of the automobile.

Tort. Writ in the Municipal Court of the City of Boston dated November 19, 1963.

The action was heard by *Shamon, J.*

*James J. Nixon, Jr.* (*David G. Nagle, Jr.*, with him) for the plaintiff.

*Louis B. Russell* for the defendant.

Wilkins, C.J. This action of tort is for conversion of an automobile. The judge in the Municipal Court of the City of Boston found for the plaintiff. The Appellate Division vacated that finding, and ordered the entry of a finding for the defendant. The plaintiff appealed.

The case was tried on a statement of agreed facts. On or about September 12, 1962, one Borrelli purchased a Rambler automobile for his own personal and family use, and executed a purchase money security agreement (chattel mortgage type) under which he gave to the plaintiff bank a security interest and promised to pay $2,055.22 in thirty-six monthly instalments. The agreement was not recorded. He made two payments. In November, 1962, without

paying the balance of $1,952.46, he traded the automobile in the purchase of a new automobile from Kennedy Rambler, Inc., a dealer in new and used automobiles. Both Kennedy and Borrelli have been adjudicated bankrupt. The plaintiff has never received the balance from Kennedy or anyone.

Kennedy sold the automobile to one Mrs. Peters, who purchased for her own personal and family use. To finance the transaction with the defendant Auto Owners Finance Company, Incorporated, she executed a purchase money security agreement (retail instalment contract type), which was duly recorded. She defaulted in her payments, and the defendant repossessed the automobile. The defendant, with the assent of all parties, sold the automobile for $1,130, and is holding the proceeds to await the outcome of this case.

The decisive issue is whether when Mrs. Peters, as an innocent purchaser for value, acquired the automobile from Kennedy, she took free of the plaintiff's unrecorded security interest and could transfer her unimpaired title to the defendant. The plaintiff argues that under G. L. c. 106, § 9–307 (2) Kennedy, a dealer, was selling from "inventory" and hence the automobile was not "consumer goods" in its hands.[1]

The crucial point is whether under § 9–307 (2) the seller as well as the buyer must be a consumer. This subsection, as far as material, reads: "In the case of consumer goods . . . a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes . . . unless prior to the purchase the secured party has filed a financing statement covering such goods." Careful reading of the entire subsection leads to the conclusion that the opening phrase, "In the case of consumer goods," must require that the seller as well as

---

[1] General Laws c. 106, § 9–109, reads as follows: "Goods are (1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes; . . . (4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

the buyer be a consumer. If the buyer alone has to be a consumer, the opening phrase would be surplusage because of the subsequent provision that the buyer purchase "for his own personal, family or household purposes," which is nothing more than a repetition of the definition of consumer goods in § 9–109 (1).

We hold that under § 9–307 (2) both the buyer and seller must be consumers. The view has unanimous support in the authorities so far as they have come to our attention. In *Everett Natl. Bank* v. *Deschuiteneer,* 109 N. H. 112, the same conclusion was squarely reached. See *National Shawmut Bank* v. *Vera,* 352 Mass. 11, 17. This is conceded by the defendant, which disputes its soundness. See Coogan, Article 9 of the Uniform Commercial Code: Priorities among Secured Creditors and the "Floating Lien," 72 Harv. L. Rev. 838, 848; Vernon, Priorities, The Uniform Commercial Code and Consumer Financing, 4 B. C. Ind. & Comm. L. Rev. 531; Protection of a Buyer at an Execution Sale under U. C. C. Section 9–307, 9 B. C. Ind. & Comm. L. Rev. 97, 103–105; Coogan, Hogan and Vagts, Secured Transactions under the U. C. C. §§ 7.02 (4) and 19.02 (3) (c); Gilmore, Security Interests in Personal Property, § 26.12, p. 716.

The order of the Appellate Division must be reversed and the report dismissed.

*So ordered.*