*Municipal Court of the City of Boston*
No. 256695

# THE NATIONAL SHAWMUT BANK OF BOSTON

v.

# CORCORAN MOTOR SALES CO., INC.

Argued: June 18, 1971 - Decided: Oct. 22, 1971.

*Present:* Adlow, C. J.; Lewiton, Elam, JJ.
Case tried to *DeGuglielmo, J.*

**Lewiton, J.** This is an action of tort to recover for the value of a motor vehicle ("Ford") alleged to have been converted by the defendant, Corcoran Motor Sales Co., Inc. ("Corcoran"). Defendant answered by way of general denial. After denying requests for rulings submitted by the plaintiff at the close of the evidence, the trial judge found for the defendant. The case is here on the plaintiff's claim that the trial judge erred in denying its requested rulings, and in holding that the plaintiff was estopped to assert its security interest in the motor vehicle against the defendant.

*At the trial there was evidence tending to show the following:*

The plaintiff had financed the purchase of the Ford by one Vavlites from a dealer other than Corcoran on June 15, 1967. As part of this transaction, Vavlites executed a promissory note and a security agreement (chattel mortgage type) in favor of the plaintiff, which issued a check in the amount of $3,500 to the automobile dealer in payment for the Ford. The reverse side of the security agreement had a pencilled check mark indicating that the motor vehicle was being purchased for personal, family or household purposes, but there was no evidence as to when and under what circum-

stances the check mark was placed on the document. The security agreement was never recorded. In September of 1969, Vavlites purchased another automobile from Corcoran, and as part of that transaction, he traded the Ford to Corcoran and received a trade-in allowance of $2,700. Shortly thereafter Corcoran sold the Ford to an unidentified person for $2,175. The fair market value of the Ford when received in trade by Corcoran was $1,850.

It further appeared in evidence that on the date of the sale of the Ford by Corcoran, Vavlites owed the plaintiff $1,118 on the 1967 note, and as in arrears in his payments due thereunder. The security agreement gave the plaintiff the right, after default by the debtor, to take immediate possession of the motor vehicle without demand. Corcoran was wholly unaware of the aforementioned security agreement or of any interest the plaintiff might have had in the Ford until February 1970. The plaintiff was unaware of the alleged conversion until February 1970 when it notified the defendant Corcoran of its security interest.

At the close of the evidence the plaintiff requested the trial judge to rule, in substance, that the plaintiff was entitled to immediate possession of the Ford at the time of the alleged conversion by Corcoran, and that its security interest in the Ford was superior to any rights which Corcoran might have acquired by reason of taking the car in trade from Vavlites.

All of the requested rulings were denied by the trial judge, who made findings of fact substantially in accord with those set forth above. He went on to rule that although the plaintiff was not obliged, under the Uniform Commercial Code, to record the security agreement, it was, by reason of such failure to record, estopped to deny that Vavlites had unencumbered title to the Ford when he transferred it to Corcoran. On the basis of this ruling the trial judge found for the defendant. The aforementioned rulings were erroneous.

██. The evidence would have warranted a finding by the trial judge that, in the context of the transactions of 1967 between the plaintiff bank and Vavlites, the motor vehicle in question was "consumer goods" as defined in the Uniform Commercial Code (G. L., c. 106, § 9-109 (1)). Such a finding seems implicit in the statement in his Memorandum of Findings that

> "I find that ... the plaintiff had no obligation under the Uniform Commercial Code to record the so-called 'security agreement chattel mortgage' ".

On the basis of this implicit finding, the trial judge should have granted the requested rulings that the plaintiff acquired a perfected security interest in the vehicle in 1967 (G.L., c. 106, § 9-302(d)), and that Corcoran, as a dealer in motor vehicles, having acquired the Ford in 1969 for purposes other than personal ones (G.L., c. 106, § 9-307 (2)) was subject to the

prior security interest of the plaintiff. *New England Merchants National Bank* v. *Auto Owners Finance Co., Inc.*, 355 Mass. 487, 489; *National Shawmut Bank of Boston* v. *Vera*, 352 Mass. 11, 16-17.

However, since the trial judge appears to have rested his decision on the doctrine of estoppel, without regard to the special rules applicable to "consumer goods" as defined in the Code, we now consider the correctness of his ruling that the plaintiff was estopped to assert its security interest against Corcoran. Apart from the plaintiff's failure to file the security agreement, the report here discloses no other action or inaction on its part which tended to clothe Vavlites with actual or apparent authority to convey good title to the Ford or to enable him to defraud the defendant by purporting to transfer to the defendant a clear title to the motor vehicle in question.

The evidence did not warrant the application of the doctrine of estoppel against the plaintiff. *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.*, 343 Mass. 622, 627 and 628. *McGeever* v. *American Nat'l Red Cross*, 330 Mass. 239, 243. *Royle* v. *Worcester Buick Co.*, 243 Mass. 143, 146. *Marsh* v. *S.M.S. Co.*, 289 Mass. 302, 307. The instant case, involving a fraudulent sale of a motor vehicle, which was subject to a perfected security interest, by a private individual to an automobile dealer, is distinguishable from cases in which a mortgage of automobiles has left them in the possession of the mortgagor

automobile dealer under circumstances permitting a finding of apparent authority in the dealer to sell the vehicle to a buyer having no knowledge of any limitation on the authority of the seller to give a good and complete title. *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 326. *Handy* v. *C.I.T. Corp.,* 291 Mass. 157. *Denno* v. *Standard Acceptance Corp.,* 277 Mass. 251, 255. *Simons* v. *Northeastern Finance Corp.,* 271 Mass. 285, 290.

It would indeed be anomalous if a party, engaging in a transaction precisely in the manner prescribed by the pertinent statutory provisions for the creation and perfecting of a security interest in his favor, should thereafter be held, solely on the basis of such actions, to be estopped from asserting the security interest so created and perfected. Yet, this would be an effect of the ruling here being considered, as applied to the purchase money security interest provided for by the Uniform Commercial Code with respect to "consumer goods". G. L. c. 106, §§ 9-109 (1), 9-302 (1) (d), 9-303 (1), 9-307 (2). *New England Merchants National Bank* v. *Auto Owners Finance Co., Inc., supra. National Shawmut Bank* v. *Vera, supra.*

**Finding for the defendant vacated. New trial ordered.**

HARRY SESNOVICH

of Boston for the Plaintiff.

CURHAN & CURHAN

of Boston for Defendant Corcoran Motor Sales Co., Inc.