362 So.2d 1245 (1978)
MEMPHIS BANK & TRUST COMPANY
v.
Leland D. PATE.
No. 50578.
Supreme Court of Mississippi.
September 20, 1978.
*1246 Yancy & Easley, Cliff R. Easley, Jr., Bruce, Gary L. Jewel, Memphis, Tenn., for appellant.
Meek & Meek, Buchanan Meek, Jr., Eupora, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
LEE, Justice, for the Court:
Memphis Bank & Trust Company filed suit in the Circuit Court of Webster County against Leland D. Pate, seeking possession of an automobile. Judgment was entered in favor of Pate and Memphis Bank & Trust Company has appealed, assigning the following errors in the trial below:
(1) The execution sale was void, therefore, Springer received no title to the subject vehicle at that sale and cannot convey more than he received.
(2) The lien of the appellant is valid in Mississippi and superior to the interests of Springer and Pate.
(3) The procedure described by the Motor Vehicle Act is exclusive for protecting security interests, therefore, even if Mississippi Code Annotated Section 75-9-307 (2) (1972) applies, appellant has a recorded security interest.
(4) The judge erred in his determination that Subsection (2) of Mississippi Code Annotated Section 75-9-307 (1972) allowed Pate to take free and clear the security interest of appellant.
The appellant is a state banking institution chartered under the laws of the State of Tennessee with its principal place of business in Memphis. On February 6, 1976, one Lester Eugene Tuck, a resident of Memphis, purchased a 1976 Datsun station wagon from Pat Patterson Motor Sales, Inc., (in Memphis) and executed an installment sales contract and security agreement. This security agreement was assigned to appellant on the same date and the lien of appellant on the station wagon was perfected March 1, 1976, when the bank's lien was shown on the Tennessee certificate of title.
Tuck became delinquent in his monthly payments on the contract. He was contacted by the bank on September 28, 1976, at which time he advised that the station wagon had been attached. The bank notified *1247 its attorney, but the automobile was sold at a sheriff's execution sale in Memphis on October 5, 1976. The vehicle was purchased at the sale by T.J. Springer, manager of Springer Motor Company in Mantee, Mississippi. He listed his address as being in Memphis. Springer paid four hundred seventy-five ($475.00) for the vehicle and it was subsequently sold by him (Springer Motor Company) to the appellee for the sum of thirty-one hundred dollars ($3,100.00). Pate purchased the vehicle for family purposes.
Appellant was unable to locate Springer in Memphis, and finally, through the Motor Vehicle Comptroller's Office in Mississippi, ascertained that a tag had been obtained by appellee and also determined that Springer had sold the vehicle to him. Appellee did not know about the lien until he was notified in 1977. He had purchased the vehicle to be used as a family vehicle and for personal use.

I.
Was the execution sale void preventing T.J. Springer from conveying title to Leland D. Pate?
Appellant argues that regardless of whether the execution sale was void, as it contends pursuant to Chumbley v. Carrick, 194 Tenn. 612, 254 S.W.2d 732 (1953); Franklin Savings & Loan Corporation v. Snapp, 179 Tenn. 151, 163 S.W.2d 332 (1942); Tibbs v. Zimmerman, 26 Tenn. App. 321, 171 S.W.2d 832 (1941); and Evans v. Belmont Land Company, 92 Tenn. 348, 21 S.W. 670 (1893); the sale was ineffective to vest title in Springer and did not terminate or supersede appellant's perfected security interest, and was subject to that interest.
Mississippi Code Annotated Section 75-9-202 (1972) provides: "Each provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."
79 C.J.S. Supplement Secured Transactions § 61, at 66 (1974) provides:
"A purchaser of collateral at an execution sale conducted without regard to any default on the part of the debtor acquires only the title of debtor, and the collateral continues subject to the lien of the secured party."
In Allstate Insurance v. Estes, 345 So.2d 265 (Miss. 1977), this Court held that a purchaser can acquire only that interest which the seller had.
Powell v. Whirlpool Emp. Federal Credit Union, 42 Mich. App. 228, 201 N.W.2d 683 (1972), holds that an execution sale passes only the interest held by the debtor and any purchaser takes subject to a validly perfected security interest.
In Tennessee, a security interest in an automobile is perfected by noting on the certificate of title the lien and the name of the lienholder [Tenn. Code Ann. § 59-327]. Appellant claims that the sale was void. The Tennessee statute was complied with in the present case, and we are of the opinion that the sheriff's sale, if not void under Tennessee decisions, was subject to appellant's interest.

II.
Was appellant's lien on the vehicle still valid in Mississippi?

III.
Is the procedure prescribed by the Motor Vehicle Title Law the exclusive means for protecting the security interest in question?
Mississippi Code Annotated Section 75-9-103 (1972) read in part as follows:
"(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within thirty (30) days *1248 after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four (4) months and also thereafter if within the four-month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four-month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.
(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."
Mississippi Code Annotated Section 75-9-203 (1972) provided: "... [I]n the case of conflict between the provisions of this chapter and any such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein."
If the Mississippi Code section relating to Uniform Commercial transactions applied to the present case, under those sections and the facts here, appellant still would hold a valid perfected security interest which is superior to any interest acquired by Springer and appellee. However, we are of the opinion that the provisions of the Mississippi statute dealing with motor vehicle titles control.
Mississippi Code Annotated Section 63-21-43 (1972) provided:
"(3) If a vehicle is subject to a security interest when brought into this state, the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject to the following:
* * * * * *
(b) If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:
(i) If the name of the lienholder is shown on an existing certificate of title issued by that jurisdiction his security interest continues perfected in this state.
(ii) If the name of the lienholder is not shown on an existing certificate of title issued by that jurisdiction the security interest continues perfected in this state for four months after a first certificate of title of the vehicle is issued in this state, and also thereafter if within the four-month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four-month period, in which case perfection dates from the time of perfection in this state."
The above section is exclusive as set forth by Mississippi Annotated Section 63-21-55 (1972), as follows:
"Except as provided in section 63-21-53, the method provided in this chapter of perfecting and giving notice of security interests subject to this chapter is exclusive. Security interests subject to this chapter are hereby exempted from the provisions of law which otherwise require or relate to the filing and recording of instruments creating or evidencing security interests."
Where the name of the lienholder appears on the face of the title, which is the situation here, the perfection of the security interest continues. There has been no issuance *1249 of a title certificate in Mississippi, and we are of the opinion that the perfected security interest in Tennessee is valid in Mississippi.

IV.
Did the trial judge err in determining that Subsection (2) of Mississippi Code Annotated Section 79-9-307 (1972) permitted appellee to take free and clear of the security interest of appellant?
We have held, supra, that the Mississippi Vehicle Title Law controls in this case rather than Mississippi Commercial Code. However, the trial judge based his decision on Section 75-9-307 (2) holding that the subject vehicle constituted consumer goods and the section merits some discussion here. It provided:
"(2) In the case of consumer goods and in the case of farm equipment having an original purchase price not in excess of two thousand five hundred dollars ($2,500.00) (other than fixtures, see Section 9-313) [§ 75-9-313], a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes or his own farming operations unless prior to the purchase the secured party has filed a financing statement covering such goods."
The evidence indicates that appellee (1) bought without knowledge of the security interest, (2) for value and (3) for his own personal family or household purposes. The definition of consumer goods is stated in Mississippi Code Annotated Section 75-9-109 (1972):
"Goods are
(1) `consumer goods' if they are used or bought for use primarily for personal, family or household purposes;
* * * * * *
(4) `inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, of if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."
Consumer goods are defined as goods in the hands of the seller as well as the buyer, otherwise, the goods would constitute a part of the seller's inventory. The seller must hold the property for personal, family or household purposes at the time of the sale and the buyer likewise must buy and use the property for those purposes. White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 25-14, at 943-944 (1972) gives the following discussion on this question:
"Perhaps a word is in order to explain how we arrived at the conclusion that the goods must be consumer goods in the seller's hands. We find that requirement in the prepositional phrase which introduces 9-307 (2): `in the case of consumer goods...' That phrase must refer to the status of the goods in the hands of the seller or it would be redundant, for the next to the last clause in the sentence (`and for his own personal, family or household purposes') refers to the status of the goods in the buyer's hands. Thus, to give meaning to the introductory phrase, one must find it refers to the status of the goods in the seller's hands. This interpretation is also supported by earlier drafts of the Code in which subsection (1) was introduced by the phrase `In the case of inventory,' an apparent reference to the status of the goods in the seller's hands under subsection (1). That reference was ultimately removed on the ground that it was superfluous because a buyer in the ordinary course is defined as one who must buy out of inventory. Finally, our interpretation is supported by the bulk of the judicial and scholarly opinion on the subsection. For the foregoing reasons, we conclude that the section applies only to the sales `by amateurs to amateurs.'"
79 C.J.S. Supplement Secured Transactions § 63, at 69 (1974), states the rule as follows:

*1250 "A provision of the Uniform Commercial Code (9-307-(2)) gives protection to the buyer of consumer goods against a perfected security interest under specified circumstances. This provision is limited in its application to transactions between a consumer seller and a consumer buyer, and the goods must be consumer goods in the hands of both buyer and seller.
A buyer does not take free of a security interest under this provision where prior to the purchase a financing statement has been filed with respect to the security interest."
For decisions from other jurisdictions answering the question, see New England Merchants National Bank of Boston v. Auto Owners Finance Company, Inc., 355 Mass. 487, 245 N.E.2d 437 (1969); Everett National Bank v. Deschuiteneer, 109 N.H. 112, 244 A.2d 196 (1968); National Shawmut Bank of Boston v. Jones, 108 N.H. 386, 236 A.2d 484 (1967); Muir v. Jefferson Credit Corporation, 108 N.J. Super. 586, 262 A.2d 33 (1970).
In the present case, Springer Motor Company did not acquire and hold the vehicle primarily for personal, family or household purposes, but for retail sale, and the vehicle constituted a part of the inventory of said company. Therefore, even if the Mississippi Commercial Code governed in this case, Section 75-9-307 would not be applicable.

V.
May the defense of estoppel be raised for the first time on appeal?
Appellee argues that appellant knew for approximately one week that the vehicle had been attached and would be sold, yet, did nothing to protect its security interest. He contends that appellant is estopped from now asserting that interest. No answer or affirmative matter set up the defense of estoppel. Appellee says, however, that the defense developed during the trial and that he should be able to rely on it here. Appellee did not request permission to amend the declaration in order to state the defense of estoppel or to conform his answer and pleading to the evidence. He cannot raise the defense of estoppel for the first time on appeal. In addition, appellant had perfected its security interest and was under no duty to act in connection with the sheriff's sale.
For the reasons stated, the judgment of the trial court is reversed and judgment is rendered here in favor of appellant granting unto it possession of the vehicle.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.