## First Valley Bank v. Minninger

*Alan Black,* for plaintiff.

*Rodney D. Henry,* for defendant.

*Richard B. Somack,* for additional defendant, Seifert.

*Frank N. Gallagher,* for additional defendant, Continental Bank.

WILLIAMS, *P.J.,* May 29, 1981 — This is an action in replevin to recover possession of an automobile in the hands of defendant, Ray Minninger. The matter was tried before Williams, Jr., P.J., on December 11, 1980. After the parties' additional attempts at settlement failed, briefs were submitted and the matter is now ripe for decision.

From the testimony adduced at trial, we make the following:

## FINDINGS OF FACT

1. On November 3, 1978, additional defendant, Terry W. Seifert, purchased a 1979 Pontiac Sunbird from Key Pontiac, Inc., who is not a party to this action.

2. The subject automobile was financed by an installment sale agreement whereby the seller reserved a security interest in the automobile until the entire purchase price was paid.

3. On November 3, 1978, Key Pontiac, Inc., assigned its interest in the installment sale agreement to plaintiff, First Valley Bank, which financed the purchase by Seifert.

4. Plaintiff's encumbrance was noted on the certificate of title to the subject automobile.

5. In May, 1979, Seifert traded the Pontiac to additional defendant, Marshall Dodge, Inc., and purchased a new automobile.

6. At the time Seifert traded the Pontiac, Mar-

shall Dodge, Inc. assured Seifert that it would pay plaintiff the balance due on the automobile.

7. The balance of the purchase price in this second transaction was financed by First Pennsylvania Bank, which is not a party to this action.

8. On June 20, 1979, defendant, Ray Minninger, purchased the Pontiac from Marshall Dodge, Inc., and financed the transaction through Bucks County Bank and Trust Company, which is not a party to this action. The purchase price for the Pontiac was $5,466.

9. At the time defendant Minninger purchased the automobile, Marshall Dodge, Inc., was a dealer in motor vehicles, the Pontiac automobile was part of its inventory and the purchase was made by Minninger in the ordinary course of business.

10. On June 21, 1979, Marshall Dodge, Inc., deposited the proceeds of the sale of the automobile to Minninger in one of its accounts at Continental Bank other than the "Title and Tag" account.

11. In June, 1979, Marshall Dodge, Inc., forwarded its check in the amount of $4,121.98 to plaintiff for the net balance due on the automobile.

12. The check was dated June 22, 1979, drawn on the "Title and Tag" account Marshall Dodge, Inc. had with additional defendant, Continental Bank, and there were sufficient funds in the account to cover the check.

13. In June, 1979, Continental Bank held a security interest in all inventory and general intangible, including all cash and non-cash, proceeds held by Marshall Dodge, Inc.

14. On June 26, 1979, Continental Bank found Marshall Dodge, Inc. to be in default and elected to set off the balances in Marshall Dodge's bank accounts against the secured indebtedness. The check payable to plaintiff was returned by the drawee, Continental Bank, for insufficient funds.

15. Plaintiff has not received the installment payments due it under the Key Pontiac/Seifert contract since June 10, 1979.

16. The unpaid balance of the Key Pontiac/Seifert contract is $4,873.68.

17. Defendant Minninger is in possession of the subject automobile and has refused to return the automobile to plaintiff despite demands.

18. Additional defendant, Marshall Dodge, Inc., has not answered the complaint nor has an appearance been entered on its behalf.

## DISCUSSION

The foregoing sequence of events raises an issue involving an interpretation of the Uniform Commercial Code, 13 Pa.C.S.A. § 1101 et seq. Although the issue apparently has not been raised in an appellate decision within the Commonwealth, numerous appellate decisions in other jurisdictions have addressed the problem.

The issue involves an interpretation of section 9307(a) and (b) of the Uniform Commercial Code, which provides:

"§9307. Protection of buyers of goods

"(a) Buyer in ordinary course of business. — A buyer in ordinary course of business (section 1201 (relating to general definitions)) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

"(b) Buyer of consumer goods and certain farm equipment. — In the case of consumer goods and in the case of farm equipment having an original purchase price not in excess of $2,500 (other than fix-

tures, see section 9313), a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes or his own farming operations unless prior to the purchase the secured party has filed a financing statement covering such goods."

Subsection (a) does not support defendant Minninger because it requires that the security interest be created by the seller. In the present case, the security interest in question was not created by defendant's seller, Marshall Dodge, Inc., but rather by Key Pontiac, Inc. This interpretation is clear from the language of the statute and is supported by the policy behind section 9307(a). See Commercial Credit Equip. Corp. v. Bates, _____ Ga. App. _____, 28 U.C.C. Rep. 675 (1980).

Subsection (b) of 9307 is equally of no help to defendant's position. As is relevant to our consideration, section 9307(b) applies only in the case of consumer goods. It is undisputed that the subject automobile was a "consumer good" in the hands of defendant, as that term is defined by the code. Contrary to defendant's argument, however, it is clear that section 9307(b) requires that the goods be consumer goods as to *both* buyer and seller. Any other interpretation would make the introductory phrase, "In the case of consumer goods . . .," surplusage because the subsequent condition that the buyer take without knowledge, for value and for personal use is merely a repetition of the definition of "consumer goods" found in section 9109(1) of the code: Muir v. Jefferson Credit Corp., 108 N.J. Superior Ct. 586, 262 A. 2d 33 (1970).

The weight of authority in other jurisdictions is in accord. See Commercial Credit Equip. Corp. v.

Bates, supra; Milnes v. General Electric Credit Corp., 377 So. 2d 725 (Fla. Dist. Ct. App., 1979); Memphis Bank and Trust Co. v. Pate, 362 So. 2d 1245 (Miss., 1978); Lindsley v. Financial Collection Agencies, Inc., 97 Misc. 2d 263, 410 N.Y.S. 2d 1002 (1978); First American Bank v. Hunning, 218 Va. 530, 238 S.E. 2d 799 (1977); Black v. Schenectady Discount Corp., 31 Conn. Sup. 521, 324 A. 2d 921 (1974); Security Pacific National Bank v. Goodman, 24 Cal. App. 3d 131, 100 Cal. Rep. 763 (1972); Muir v. Jefferson Credit Corp., supra; New England Merchants National Bank v. Auto Owners Finance Co., Inc., 355 Mass. 487, 245 N.E. 2d 437 (1969); Everett National Bank v. Deschuiteneer, 109 N.H. 112, 244 A. 2d 196 (1968).

In the only reported case in Pennsylvania to address the issue, the Court of Common Pleas of York County held to the contrary. In York Consumer Discount Co. v. Hartman, 91 York 64 (1977), the court recognized the position taken in other jurisdictions but concluded that the policy of the section was to protect consumers. We are not persuaded by the reasoning of Hartman and are not bound by its decision. The purpose of section 9307(b) is to protect consumers who purchase items from consumers which are burdened with liens which are automatically perfected under section 9302(a)(4): U.C.C. Commentary and Law Digest §9-307(A)(4). Therefore, plaintiff is entitled to possession of the Pontiac as against defendant Minninger.

The next issue presented is whether plaintiff is entitled to a judgment against additional defendant Seifert. In this regard, Seifert argues that First Valley violated a confidential relationship when it provided Marshall Dodge, Inc., with the pay-off amount and, therefore, First Valley is not entitled to judgment against Seifert. No authority is cited in

support of this proposition and we have been unable to find any.

Seifert's argument disregards the fact that it is customary practice for lending institutions to provide pay-off information in these situations. In providing the information, First Valley enabled Marshall Dodge, Inc., to pay Seifert's obligation. In view of this, it is more reasonable to charge Seifert with any deficiency because he chose to deal with and impliedly authorized Marshall Dodge, Inc., to obtain the necessary information to satisfy the obligation. Therefore, First Valley is entitled to judgment against additional defendant Seifert in the amount of $4,873.68.

Finally, we address the contention that Continental Bank had no right to set-off the funds in Marshall Dodge's account. First Valley argues that Continental had no right of set-off and therefore wrongfully dishonored Marshall Dodge's check. On this theory, First Valley seeks judgment against Continental for the entire amount.

It is the law in Pennsylvania that a bank cannot apply a depositor's funds to a debt owed it by the depositor if the bank has notice that the funds actually belong to a third party: Sherts v. Fulton National Bank of Lancaster, 342 Pa. 337, 21 A. 2d 18 (1941). It has been held that a bank has sufficient notice if the account is labeled "attorney" or "distribution": Sherts v. Fulton National Bank of Lancaster, supra; Ryan Brothers v. Curwensville State Bank, 382 Pa. 248, 114 A. 2d 178 (1955). In addition, a bank cannot appropriate funds of a third party in a depositor's account, regardless of notice, unless the bank has changed its position in reliance on the funds in the account: Middle Atlantic Credit Corp. v. First Pennsylvania Bank and Trust, 199 Pa. Superior Ct. 456, 185 A. 2d 818 (1962).

This rule that a bank cannot set-off funds belonging to a third party on deposit in a debtor's account is based on a trust theory. Under this theory the funds must be shown to belong to the third party while in the hands of the depositor as where the depositor is a trustee or agent of the third party: 10 Am. Jur. 2d, Banks §675. In this matter, the burden of proof is on the party claiming an interest in the deposit which has been set-off: 10 Am. Jur. 2d, Banks §677.

On this issue, the evidence is insufficient to establish the disposition of the proceeds of the sale of the Pontiac to Minninger. There is some evidence that the proceeds were deposited in one of the Marshall Dodge, Inc., accounts. However, it is clear that the proceeds were not deposited in the "Title & Tag" account. Therefore, it cannot be determined whether the proceeds of sale were in any Marshall Dodge, Inc., account at the time the check to First Valley was issued.

This inability to trace the proceeds of sale is fatal to First Valley's argument. Even assuming, arguendo, the proceeds were held by Marshall Dodge in some trust capacity, if they were misappropriated by Marshall Dodge, then Continental cannot be held liable. First Valley is the party claiming an interest in the deposit and, therefore, First Valley has the burden of tracing the funds. Having failed in that burden, judgment must be given Continental Bank as against First Valley.

Finally, we note that additional defendant, Marshall Dodge, Inc., has not answered defendants' complaint against it. Therefore, defendant, Ray Minninger, is entitled to a default judgment, although this is of little value in that Marshall Dodge, Inc., is insolvent.

## CONCLUSIONS OF LAW

1. Plaintiff, First Valley Bank, is entitled to possession of the 1979 Pontiac Sunbird.

2. Additional defendant, Terry W. Seifert, is liable to plaintiff for the balance due on the original installment contract.

3. Plaintiff has the burden of proving that it is entitled to the funds on deposit with additional defendant, Continental Bank, and applied to the indebtedness of additional defendant, Marshall Dodge, Inc.

4. Plaintiff has not met its burden in this regard.

5. Additional defendant, Marshall Dodge, Inc., is liable to plaintiff for the balance due on the original installment contract.

6. Additional defendant, Marshall Dodge, Inc., is liable to defendant, Ray Minninger, for the purchase price of the Pontiac.

## VERDICT

Verdict is entered for plaintiff, First Valley Bank, and against defendant, Ray Minninger, for possession of the 1979 Pontiac Sunbird, serial number 2E27A97504415. There is no evidence as to the value of the Pontiac and accordingly no verdict entered as to its value.

Verdict is also entered for plaintiff and against additional defendants, Terry W. Seifert and Marshall Dodge, Inc., in the amount of $4,873.68.

Verdict is entered for defendant, Ray Minninger, and against additional defendant, Marshall Dodge, Inc., in the amount of $5,466.

The prothonotary is directed to give notice of the foregoing verdict to counsel for the parties. If no

exceptions are filed within ten days from the date of this verdict, the prothonotary shall, on praecipe, enter final judgment upon the verdict.