This is a case of first impression in Alabama involving the priority of conflicting security interests in an automobile.
General Motors Acceptance Corporation (GMAC) and First Dallas County Bank both claim a security interest in an automobile owned by Everette Smith. GMAC and the bank both requested a declaratory judgment to determine the status of title to the automobile and the priority of the liens asserted by them. Anore tenus hearing was held on the declaratory judgment action.
On April 30, 1981 the trial court held, in pertinent part, that GMAC was entitled to immediate possession of the automobile in question. On May 28, after the bank had *Page 461 
requested a new trial, the trial court amended its original order to require that the vehicle be sold and the proceeds reported to the court. After the trial court amended its original order, the bank again made a motion for a new trial. This motion was denied and the bank appeals to this court.
The primary issue before this court is whether, in this instance, the bank is protected by the provisions of sections 7-9-307 and 32-8-60, Code of Alabama 1975. The trial court held that it was not protected by the above provisions. For the reasons hereinafter stated, this court concludes that the learned and distinguished trial judge erred in so holding.
The record reveals the following: On April 19, 1980, Julius Davis purchased a new 1980 Pontiac TransAm from Marion Motor Company. Though Davis was a used car dealer, there is evidence that he purchased this particular vehicle for his own personal use and not for resale. The installment sales contract/security agreement provided for payments over a period of forty-eight months and gave Marion Motor Company a security interest in the vehicle. Marion Motor Company subsequently assigned its security interest to GMAC. A certificate of title was issued pursuant to the Alabama Certificate of Title Act showing Julius Davis as owner and GMAC as first lienholder.
Davis kept the automobile for approximately seven months. During this time the automobile was apparently used by Davis as his own personal vehicle. On November 12, 1980, Davis sold the automobile to Everette Smith.
Smith obtained a loan from First Dallas County Bank for the purpose of obtaining funds with which to buy the vehicle. In order to procure this loan Smith entered into an installment sales contract-security agreement which gave the bank a security interest in the automobile. The proceeds of the loan were given to Davis in full payment of the purchase price of the automobile. Davis, however, did not pay GMAC the balance due on his loan, and, thus did not obtain from GMAC the original title on the vehicle. Consequently, GMAC retained the original title, along with the note, financing statement, security agreement and other loan documents furnished by Davis in connection with his loan.
GMAC subsequently learned that Davis had sold the automobile to Smith but had failed to pay GMAC. After notifying the bank of GMAC's security interest, GMAC filed a conversion and detinue action against Smith and the bank. The bank filed an answer, cross-claim and counterclaim in which it denied liability, asserted that it was not in possession of the automobile, asserted claims against Smith for his liability to the bank, asserted claims against GMAC for abuse of process and sought a declaratory judgment to determine the priority of the conflicting security interests. Following a hearing on motions filed by the bank, GMAC amended its complaint to delete the bank as a defendant under the detinue and conversion counts of its complaint. GMAC added a count seeking a declaratory judgment to determine the priority of the security interests.
On April 27, 1981, an ore tenus hearing was held for the purpose of determining the legal aspects of the declaratory judgment counts. Following the hearing the trial court made a finding of fact and entered an order on April 30, 1981, within which the trial court held that GMAC was entitled to immediate possession of the automobile. By so holding, the trial court implicitly held that GMAC's security interest took priority over the bank's security interest.
The bank filed a motion for a new trial on May 7, 1981. As grounds for its motion the bank maintained that the trial court could not properly reach a decision based upon contested factual issues because Smith had demanded a jury trial.
Following a hearing on the bank's motion the trial court amended its original order to require that the automobile be sold in a reasonably commercial manner and that the proceeds be reported to the court. The amendment did not change the original order regarding the priority of the security interests. *Page 462 
Both the bank and Smith filed motions for a new trial after the amended order was rendered. These motions were overruled and the bank appeals to this court from the amended order.
Preliminarily, the bank contends that the trial court erred in conducting an evidentiary hearing, making findings of fact and rendering a judgment in light of the fact that a jury trial had been requested.
According to rule 39 (a)(1), A.R.C.P., when a jury trial has been demanded, there must be a trial by jury on all the issues so demanded unless "the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury. . . ."
Although a jury was clearly demanded, a review of the record reveals that the bank's attorney consented to a trial by the court on the issue of lien priority.
As indicated above, the bank requested a declaratory judgment on the issue of lien priority. The record reveals that the bank's attorney urged that this issue be determined as quickly as possible. In response to this urging, the trial court stated that it could have a hearing on the declaratory judgment on April 27. The bank's attorney agreed to that date and further stated that lien priority was a legal issue that could be ruled upon at the April 27 hearing. A hearing was held on April 27. Although he did not present any witnesses, the bank's attorney fully participated in the hearing through his right of cross-examination.
The foregoing clearly indicates that the bank's attorney consented to a trial by the court on the issue of lien priority. The bank contends, however, that since a jury trial had been demanded, the trial court could determine the legal issues only. In order to determine the priority of the liens, which is a question of law, the trial court had to make some factual determinations. If it were not necessary to make some factual determinations, it would have been pointless to conduct a hearing and receive testimony. In this regard we again note that the bank's attorney fully participated in the hearing.
Additionally, we note that the bank's attorney at no time during the hearing ever objected to proceeding without a jury. In fact, this issue was raised for the first time in the bank's motion for a new trial after the trial court had ruled adversely to the bank. Our supreme court has previously held that in order to preserve error for appeal there must be an objection and an adverse ruling at the trial level. Holt v.Davidson, 388 So.2d 548 (Ala. 1980); Record Data International,Inc. v. Nichols, 381 So.2d 1 (Ala. 1979).
For the foregoing reasons we conclude that the bank's contention regarding the jury demand is without merit.
We now turn to the primary issue in this case. As indicated earlier, the bank contends that its lien has priority due to sections 7-9-307 (1) and 32-8-60. GMAC obviously disputes this contention. Specifically, GMAC relies upon section 7-9-307 (2), Code of Alabama 1975, to establish its priority.
Section 7-9-307 (2) provides, in pertinent part, the following:
 In the case of consumer goods, . . . a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes . . . unless prior to the purchase the secured party has filed a financing statement covering such goods.
GMAC, through able counsel, contends that the automobile was a consumer good when purchased by Davis and, furthermore, that the automobile remained a consumer good even though Davis placed it on his used car lot and sold it to Smith. Thus, according to GMAC, since the automobile was a consumer good when sold to Smith and since GMAC had properly perfected its security interest in the automobile prior to its sale, GMAC has priority over both Smith and the bank under section 7-9-307 (2). *Page 463 
In order to resolve this issue we must examine the scope and proper applications of both subsections of section 7-9-307. Both subsections are basically designed to protect the consumer. The amount of protection offered by each subsection differs, however, and each subsection applies to a distinct and exclusive situation.
Section 7-9-307 (1) provides as follows:
 A buyer in ordinary course of business (subsection (9) of section 7-1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
Though not specifically so limited, subsection (1) applies primarily to the sale of inventory. This limitation is apparent if section 7-9-307 (1) is read in conjunction with certain definitions found in the Uniform Commercial Code. Subsection (1) protects only a "buyer in the ordinary course of business." One can be a "buyer in the ordinary course of business" only if a purchase is made from someone who is in the "business of selling goods of that kind." Section 7-1-201 (9), Code of Alabama 1975. By definition, goods held for sale are inventory. Section 7-9-109 (4), Code of Alabama 1975. See II G. Gilmore, Security Interests in Personal Property § 26.6 (1965); J. White R. Summers, Handbook of the Law Under the Uniform Commercial Code § 25-13 (2d ed. 1980).
Subsection (1) allows a "buyer in the ordinary course of business" to take free of a security interest created by his seller because it is felt that such a buyer has the right to expect that a merchant has the power to sell the particular item and that the buyer will be able to retain the item free of any security interest created by the seller, Northern IllinoisCorporation v. Bishop Distributing Co., 284 F. Supp. 121 (W.D. Mich. 1968); Texas National Bank of Houston v. Aufderheide,235 F. Supp. 599 (E.D. Ark. 1964); 4 R. Anderson, Uniform Commercial Code § 9-307:11 (2d ed. 1971). In addition, it would be impractical to expect buyers to make a record search of financing statements each time they purchase an item in order to ensure that the item is not encumbered. Northern IllinoisCorp. v. Bishop Distributing Co., supra; R. Braucher R. Riegert, Introduction to Commercial Transactions 455 (1977). A final point that supports protecting "buyers in the ordinary course of business" is the fact that secured creditors who know that goods financed by them are inventory must expect that the goods will be sold and, consequently, that the "buyer in the ordinary course of business" should have superiority. 4 R. Anderson, supra, at § 9-307:8.
Like subsection (1), subsection (2) is applicable to a limited type of transaction. However, unlike subsection (1), subsection (2) provides only limited protection to the consumer. Subsection (2) was intended to apply only to transactions in which a purchaser buys consumer goods from someone who is not in the business of selling goods of that kind, i.e., a non-merchant. See section 7-2-104 (1), Code of Alabama 1975. A close reading of the provision reveals that subsection (2) applies only if the goods involved are consumer goods in the hands of both the buyer and seller. New EnglandMerchants National Bank of Boston v. Auto Owners Finance Co.,355 Mass. 487, 245 N.E.2d 437 (1969); Memphis Bank Trust Co.v. Pate, 362 So.2d 1245 (Miss. 1978); Everett National Bank v.Deschuiteneer, 109 N.H. 112, 244 A.2d 196 (1968).
A basic example of the type of transaction that subsection (2) was intended to apply to is a yard sale wherein one consumer sells secondhand goods to another consumer. Stated differently, subsection (2) applies to sales by amateurs to amateurs. II G. Gilmore, supra at § 26.12. A buyer in such a transaction takes free of a prior security interest only if, prior to the purchase, the secured party has filed a financing statement. Perhaps a secured creditor under subsection (2) is given more protection because, unlike the situation under subsection (1), a creditor having a security interest in consumer goods has no reason to expect that the goods will be sold.
Though we acknowledge that there is support in both cases and commentaries for GMAC's contention that section 7-9-307 (2) *Page 464 
controls (Balon v. Cadillac Automobile Co. of Boston, 113 N.H. 108,303 A.2d 194 (1973); II G. Gilmore, supra at § 26.8), it is apparent, in light of the above discussion, that the facts and circumstances of this case are not within the intended scope of section 7-9-307 (2). Admittedly there is evidence to support the trial court's finding that the automobile was a consumer good when purchased by Davis. There is also authority from other states for GMAC's contention that the automobile remained a consumer good while in Davis's possession. FranklinInvestment Co. v. Homburg, 252 A.2d 95 (D.C. 1969); Balon v.Cadillac Automobile Co. of Boston, supra; McGehee v. ExchangeBank Trust Co., 561 S.W.2d 926 (Tex.Civ.App. 1978). However, this is simply not a case of an amateur selling a used automobile to another amateur. Rather, it is a case of a used car dealer, a merchant, selling a used car to a purchaser in the ordinary course of the dealer's business.
Since section 7-9-307 (2) does not apply to these facts, we must hold that the outcome of this case must be governed by section 7-9-307 (1). Applying section 7-9-307 (1) to the facts of the instant case we conclude that Smith took the automobile free of GMAC's security interest.
Viewed from Smith's perspective, this decision is clearly appropriate. It is undisputed that Davis was engaged in the business of selling automobiles. Smith came to Davis's lot and bought an automobile from him in the ordinary course of Davis's business. Though it makes no difference under section 7-9-307 (1), Smith neither knew of GMAC's interest nor knew that it was perfected. Clearly Smith had a right to expect that Davis had the power to convey the automobile to him and that he could retain the automobile free of any security interest created by Davis. In addition, GMAC clearly knew that Davis was in the used car business and GMAC could have anticipated that Davis would sell the automobile at some future time.
In closing we briefly mention the Uniform Certificate of Title and Antitheft Act. Where motor vehicles are concerned, this Act rather than Article 9 of the U.C.C. governs the perfection of security interests. Sections 7-9-302 (3)(b) and32-8-66, Code of Alabama 1975. Section 32-8-60 (3) of the Act is analogous to section 7-9-307 (1) and provides as follows:
This chapter does not apply to or affect:
. . . .
 (3) A security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, but a buyer in the ordinary course of trade from the manufacturer or dealer takes title free of the security interest.
Based upon our previous determinations that Davis was a dealer who held the vehicle for sale and that Smith was a buyer in the ordinary course of business, it is apparent under section32-8-60 (3) that Smith took the vehicle free of GMAC's security interest. Thus, under both section 7-9-307 (1) and section32-8-60 (3) GMAC's security interest in the vehicle was extinguished. Consequently, the bank is now the only party with a valid lien on the vehicle.
This case is due to be reversed and remanded for entry of a judgment not inconsistent with the above.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.