**In re DOTHAN LINCOLN-MERCURY COMPANY, INC., Debtor.**

**FORD MOTOR CREDIT COMPANY, A Corporation, Plaintiff,**

v.

**DOTHAN LINCOLN-MERCURY COMPANY, INC., A Corporation, and Robert E. Black, Defendant.**

**Adv. No. 83-0185.**

United States Bankruptcy Court, M.D. Alabama.

March 20, 1984.

Robert F. Northcutt, Dothan, Ala., for plaintiff.

C.H. Espy, Jr., Dothan, Ala., for Dothan Lincoln Mercury Co, Inc.

William C. Carn, III, Dothan, Ala., for Robert E. Black.

OPINION ON COMPLAINT TO DETERMINE RIGHTS IN ONE 1983 BEIGE AND GOLD LINCOLN AUTOMOBILE ID NO. 1MRBP97F6DY603560

RODNEY R. STEELE, Bankruptcy Judge.

On June 9, 1983, this court entered an order in this adversary proceeding in favor of the plaintiff and against the Dothan Lincoln-Mercury Company, Inc., a corporation, defendant, authorizing the plaintiff to proceed not only against inventory of this debtor in which the plaintiff had a security interest, but against one 1983 beige and gold Lincoln automobile, ID No. as above,

which was apparently not in inventory at the time of the conversion of this case from Chapter 11 to Chapter 7.

By an amendment filed on October 25, 1983, the plaintiff added Robert E. Black, an individual, as a party defendant, and sought to recover from Robert E. Black the Lincoln automobile in question, and asserted that Mr. Black held the automobile subject to the valid and perfected security interest of the plaintiff, and that he ought to return the vehicle to the plaintiff or to pay the wholesale floorplan balance on said vehicle of $19,339.71, plus interest, costs and attorney's fee.

By an order dated October 25, 1983, the court allowed the amendment and added Mr. Black as a party-defendant. Service was thereafter had upon Mr. Black, and on January 16, 1984, Mr. Black answered by his attorney, demurring generally, denying generally, and denying any indebtedness or that the plaintiff was entitled to any relief as against Black.

The matter came on for hearing on February 8, 1984, at Dothan, in accordance with a notice to the attorneys setting that time and place for the trial.

When the matter came on for hearing, there were present the attorney for plaintiff and a representative of plaintiff, the defendant Mr. Black, and his attorney, the trustee in bankruptcy, and the attorney for the debtor.

Testimony was taken from Mr. Ed L. Gregory, a representative of Ford Motor Credit, from Mr. Bill Owens, the owner of the debtor, from Mr. Robert Black, the defendant, and from Mr. L.M. Adamson.

## FINDINGS

Before this debtor went into Chapter 11 bankruptcy on November 19, 1982, it was operating a Lincoln-Mercury dealership at Dothan, Alabama.

Back in August of 1982, the defendant Black had requested the debtor to order him a new automobile, and it was ordered subject to his approval. It arrived sometime in late September, 1982. In October,

Black approved the car, and agreed to take delivery sometime later. On November 19, 1982, the debtor filed a Chapter 11 proceeding in bankruptcy, and continued to operate the business as debtor in possession. Thereafter, on about November 30, or December 1, Black came to Dothan, and took delivery of the vehicle.

The circumstances of his taking delivery and of the payment for the vehicle are of utmost importance in this case. Mr. Black and Mr. Adamson, his "partner" had loaned $100,000.00 to Dothan Lincoln-Mercury in March of 1982, and the arrangement for repayment was in increments of $20,000.00, $5,000.00 of each payment being accountable as interest on the loan.

On November 30, or December 1, 1982, when Black was in Dothan and took delivery of the car, he was there for the purpose of discussing the financial difficulties of the debtor, and to discuss possible further extensions of credit by him and Adamson to the debtor, and the removal of the location of the dealership.

It had apparently been previously agreed, prior to the filing of the Chapter 11, that the debtor would accept as payment for the vehicle, a reduction in the $100,000.00 debt owed to Black and Adamson, and Adamson and Black testified that some adjustments were made by set-off as between the partners Black and Adamson when payment was made in this manner.

The debtor had previously paid the $5,000.00 interest payment to Black. There was therefore due, as a past due payment at the time the car was delivered, the sum of $15,000.00 from the debtor.

But the debtor, in order to secure its attorney, Mr. Collier Espy, for the payment of his attorney's fees, had delivered this vehicle to Mr. Espy, who had it in possession, and who insisted Mr. Black pay him the sum of $5,000.00, the amount of his fee from the debtor, before he released the car. Mr. Black thereupon delivered a cashier's check to Mr. Espy, and took possession of the vehicle. He thereafter transported it to Florida, and received an Alabama certifi-

cate of title, which he immediately converted to a Florida certificate of title. Mr. Black lives in Florida.

Mr. Black thereafter gave the debtor a $15,000.00 credit on the outstanding balance owed to Adamson and Black.

## ISSUE

The single issue in this case is whether Mr. Black, as a purchaser of this vehicle from the debtor, while the debtor was in Chapter 11, and was debtor in possession, is a "buyer in ordinary course of business" as that term is used in Section 7–9–307, and Section 7–1–201(9) of the Alabama Uniform Commercial Code. If he is a buyer in ordinary course, then he takes free and clear of the security interest of Ford Motor Credit. If, on the other hand, he is not a buyer in the ordinary course as that term is defined in the Code, then the Ford Motor Credit Company holds a valid and perfected security interest on that vehicle under Section 7–9–306(2) of the Alabama Uniform Commercial Code.

## CONCLUSION

We must conclude that Mr. Black is not a buyer in the ordinary course of business as that term is used in the Alabama Code.

The Alabama UCC Section 7–9–307 provides:

(1) A buyer in ordinary course of business (subsection (9) of Section 7–1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller, even though the security interest is perfected, and even though the buyer knows of its existence.

(2) In the case of consumer goods, a buyer takes free of a security interest, even though perfected, if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes, unless prior to the purchase the secured party has filed a financing statement covering such goods....

This latter subsection (2) has been defined by the Alabama courts as applying only if the goods involved are consumer goods in the hands of both the buyer and the seller. See *First Dallas ·County Bank v. GMAC,* 425 So.2d 460, *affirmed,* 425 So.2d 464 (1983).

Buyer in ordinary course of business is defined in Section 7–1–201 of the Alabama Code:

(9) "Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or the security interest of a third party in the goods, buys in the ordinary course from a person in the business of selling goods of that kind, but does not include a pawn broker ... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit, and includes receiving goods or documents of title under a pre-existing contract for sale, but does not include a transfer in bulk or *as security for or in total or partial satisfaction of a money debt.*

We think the transaction in which Mr. Black purchased this automobile by a transfer for or in total or partial satisfaction of a money debt, exactly fits the definition and intention of the Alabama Uniform Commercial Code.

We cannot say that he' did not meet the test in the first portion of the definition of buyer in ordinary course, since his testimony and that of others lends support to the conclusion that he did buy in good faith and without knowledge that the sale to him was in violation of the ownership rights of Ford Motor Credit, or of its security rights, since he made inquiry not only of the owner, Mr. Owens, but of Mr. Espy, who assured him that the vehicle was not subject to the floorplan arrangement of Ford Motor Credit.

But it is without contradiction that he paid for the vehicle in large part by a reduction of the debt, which was owed to him by the debtor. This takes him out of the category of "buyer in ordinary course

of business" and makes his rights to the vehicle subject to the rights of Ford Motor Credit. See *Sterling National Bank and Trust Company of New York v. Southwire Co.*, (11th Cir., 1983) 713 F.2d 684, 36 UCC Reporting Service 1383. See also *In re Mid-Atlantic Piping Products of Charlotte, Inc.*, 24 B.R. 314, (1982) 35 UCC Reporting Service 618; *ITT Industrial Credit Co. v. H & K Machine Service Co., Inc.*, (1981) 525 F.Supp. 170, 33 UCC Reporting Service 400. Cf., *First Dallas County Bank v. General Motors Acceptance Corporation*, 425 So.2d 460, 33 UCC Reporting Service 128, (relating to the perfection of security interest in motor vehicles and the loss of that security interest).

The attorney for Black argues in brief that there is authority under the Uniform Commercial Code for the proposition that where any portion of the purchase price is not in satisfaction of a money debt, that the cash payment makes the purchaser a "buyer in the ordinary course of business." He cites *General Electric Corp. v. R.A. Heintz Construction Co.*, (D.C.Ore.1969) 302 F.Supp. 958, and other cases dating from 1939 and 1940, and decided under the Uniform Trust Receipts Act.

The only later case which we are able to find concerning this argument is *Walter E. Heller Western, Inc. v. Bohemia, Inc.*, (Ct. of App., Ore.1982) 61 Or.App. 57, 655 P.2d 1073, 35 UCC Reporting Service 1002. The court there specifically rejected the reasoning in *Heintz*, and held that fractionalizing could occur. But we are at a loss to see how fractionalizing can occur here in the case of one automobile. The purchaser Black was either a buyer in the ordinary course, or he was not. Such a holding would moreover be an obvious judicial amendment of clearly worded statutory language. We decline to follow this reasoning.

In the *Sterling National Bank* case, cited above, the court concludes that the purchaser could not take free and clear of the bank's security interest in that case, because the seller violated the specific terms of the security agreement. The crux of the matter was not so much "buyer in the ordinary course," as it was "sale in the regular course of business," a contractually defined term.

But the court held, in the course of that decision, that under the Georgia Code, it was clear that the purchaser was not a buyer in the ordinary course of business. See 713 F.2d at 686.

In the *Sterling* case, the court moreover found that the purchaser was not entitled to set-off as between mutual debts, where the bank had a clear security interest.

We think the same reasoning, as it related to set-off, and as it relates to buyer in the ordinary course of business, is applicable in this case, and we conclude finally that the vehicle in the hands of Mr. Black is subject to a valid and perfected security interest in the hands of Ford Motor Credit Company.

An appropriate order will enter.